The METHODIST HOSPITAL,
Appellant

v.

Beverley SHEPHERD–SHERMAN,
Appellee.

No. 14–08–01090–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 20, 2009.

Dwight Willis Scott Jr., Stephanie Laird Tolson, Houston, TX, Michael H. Rubin, Baton Rouge, LA, for appellants.

Jimmy Williamson, Oscar Luis Delarosa, Kenneth E. Broughton, Thomas P. Sartwelle, James R. Boston, Cindy M. Rusnak, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

## OPINION

LESLIE B. YATES, Justice.

This is an interlocutory appeal of the trial court's order denying appellant The Methodist Hospital's motion to dismiss the health care liability claims of appellee Beverley Shepherd–Sherman ("Sherman") based on her failure to meet the expert

report requirements of chapter 74 of the Texas Civil Practice and Remedies Code. Methodist claims in four issues that the motion to dismiss should have been granted because Sherman's expert was not qualified and because the report was insufficient regarding the standard of care, breach of the standard of care, and causation. We conclude that the trial court did not abuse its discretion in denying Methodists's motion to dismiss, and thus we affirm.

## BACKGROUND

Sherman suffers from Marfan syndrome, which is a condition that damages connective tissue in the body and can affect many bodily systems, including the cardiovascular system. Sherman was a long-term patient of Dr. Neal Kleiman, and he told her that if she ever had chest pains, she should call him and go to an emergency room. Dr. Kleiman would then ensure that she was treated by Dr. Joseph Coselli, a surgeon and Marfan syndrome specialist. In 2001, this scenario happened—Sherman experienced chest pains and called Dr. Kleiman on the way to the Methodist emergency room, and Dr. Kleiman contacted Dr. Coselli, who met her at the hospital and performed heart surgery.

In February 2006, Sherman again experienced chest pains and called Dr. Kleiman on her way to the Methodist emergency room. According to Sherman, this time Dr. Kleiman refused to call Dr. Coselli, despite her repeated requests. Dr. Kleiman contacted Dr. Alan Lumsden instead. Sherman continued to insist to various doctors and hospital employees that Dr. Coselli was her doctor and that she wanted him to be contacted, but she was told that Dr. Coselli no longer worked for Methodist and that Dr. Lumsden had taken his place. Two days after being admitted to Methodist, Dr. Lumsden and Dr. Michael Reardon performed aortic stent graft surgery on Sherman. After the surgery, Sherman tracked down Dr. Coselli, who transferred her to another hospital and removed the stent. Sherman suffered complications from the stent surgery, which required many subsequent surgeries and left her unable to work or care for herself alone.

Sherman sued Methodist and Drs. Kleiman, Lumsden, and Reardon. She alleged, inter alia, that the doctors were negligent because they misplaced the stent and because a stent is contraindicated for a Marfan syndrome patient. Sherman alleged that Methodist is liable because its doctors and employees did not honor her requests to have Dr. Coselli treat her and Dr. Coselli would not have inserted a stent, thereby preventing all of her subsequent problems.

Pursuant to chapter 74 of the Civil Practice and Remedies Code, Sherman filed the expert report and curriculum vitae of Dr. Phillip Adams. The defendants all objected, and Sherman was given an opportunity to file a supplemental report. The defendants again objected to Sherman's supplemental report and filed a motion to dismiss, which the trial court denied. Methodist is the only defendant appealing the trial court's ruling. We consider the initial and supplemental reports together in assessing Sherman's compliance with chapter 74.

## ANALYSIS

### A. Legal Framework

Section 74.351 of the Civil Practice and Remedies Code requires a health care liability claimant to provide the defendant with an expert report within 120 days after filing the petition. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2008). A defendant may then file a motion challenging the adequacy of the expert's

report, and the trial court "shall grant" the motion if it appears that the report does not represent a good faith effort to comply with the statutory requirements. *Id.* § 74.351(a), (*l* ). A sufficient expert report must provide a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care provided failed to meet that standard, and the causal relationship between that breach and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878–79 (Tex.2001). In providing the expert's opinions on these elements, the claimant need not marshal his evidence or present sufficient evidence to avoid summary judgment. *Palacios,* 46 S.W.3d at 878; *Patel v. Williams,* 237 S.W.3d 901, 904 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Rather, the report must provide enough information to fulfill two purposes: (1) to inform the defendant of the specific conduct the plaintiff has called into question and (2) to provide a basis for the trial court to conclude the claims have merit. *Palacios,* 46 S.W.3d at 879; *Patel,* 237 S.W.3d at 904.

■ We review a trial court's ruling on the adequacy of an expert report and a motion to dismiss based on a failure to meet the expert report requirement for an abuse of discretion. *Palacios,* 46 S.W.3d at 877; *San Jacinto Methodist Hosp. v. Bennett,* 256 S.W.3d 806, 811 (Tex.App.-Houston [14th Dist.] 2008, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). Though we may not substitute our judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts. *Id.; Sanjar v. Tur-*

*ner,* 252 S.W.3d 460, 463 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

## B. Qualifications

■ In its first issue, Methodist challenges Dr. Adams's qualifications to render an opinion as to the allegations against it. To be qualified to provide an expert report under chapter 74, an expert must, among other things, be "qualified on the basis of training or experience" to offer an opinion in the relevant area of health care. TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b)(3), (c)(1) (Vernon 2005). We must analyze the expert's training and experience regarding the "specific issue" before the court to ensure the expert is qualified to give an opinion on that issue. *Thomas v. Alford,* 230 S.W.3d 853, 857 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *see also In re Windisch,* 138 S.W.3d 507, 512–13 (Tex. App.-Amarillo 2004, no pet.).

■ Unlike her claims against the defendant doctors, Sherman's claims against Methodist are not based on the surgery itself but on Methodist's employees denying her access to her doctor of choice. Thus, the specific issue before the court involves hospital admissions procedures when a patient requests a specific doctor. Methodist argues that although Dr. Adams may be qualified to give opinions regarding Sherman's medical treatment, that does not establish his qualifications regarding the standard of care for hospital admissions procedures and the conduct of non-physician hospital personnel when a patient requests a specific doctor.

■ According to Dr. Adams's report, he has experience with all aspects of the admissions process, having been involved in numerous admissions where either a patient has requested him as a doctor or a patient he was involved with requested another doctor. He further states that he is familiar with the standard of care for

hospital personnel based on his work with admissions personnel and other hospital staff responsible for following hospital policy. Methodist contends that this experience does not qualify Dr. Adams to opine on the standard of care applicable to non-physicians because his experience is based on his perspective as a doctor, not, for example, as a nurse or admissions clerk. We disagree. A doctor is not automatically disqualified from giving opinions regarding other types of health care providers, even though the standard of care may be different for those providers. *See Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 558 (Tex.App.-Dallas 2009, no pet.); *Bennett*, 256 S.W.3d at 814; *Manor Care Health Servs., Inc. v. Ragan*, 187 S.W.3d 556, 562 (Tex.App.-Houston [14th Dist.] 2006, pet. granted, judgm't vacated, remanded by agr.). If the doctor is familiar with the standard of care for other health care providers based on experience working with or supervising them, then he can be qualified to render an opinion. *See Wallace*, 278 S.W.3d at 558–59; *Bennett*, 256 S.W.3d at 813–14; *Ragan*, 187 S.W.3d at 563. Based on Dr. Adams's experience in hospital admissions and working with hospital personnel in carrying out patient requests for specific doctors, we conclude Dr. Adams is qualified to render opinions regarding the claims against Methodist.[1] *See Wallace*, 278 S.W.3d at 558–59 (concluding doctor qualified to provide standard of care for medical center based on work with nurses, nurse practitioners, physician's assistants, and other doctors); *Bennett*, 256 S.W.3d at 814 (finding doctor qualified to state standard of care for pro-

fessional nurse in preventing bed sores based on previous work with nurses in such situations); *Ragan*, 187 S.W.3d at 564 (stating that doctor was qualified to provide standard of care for nurses based on experience working with nursing staff on the exact situation at issue in the case). Accordingly, we determine the trial court did not abuse its discretion in denying Methodist's motion to dismiss based on Dr. Adams's purported lack of qualifications, and we overrule its first issue.

### C. Standard of Care and Breach

██ In its second and third issues, Methodist argues that Sherman's expert report does not adequately identify and apply the standard of care and breach of the standard of care as to Methodist. Dr. Adams states repeatedly in his report that when a patient requests a specific doctor, the standard of care requires doctors and hospital employees to locate and contact that doctor and request his instructions for the care and treatment of that patient. According to Dr. Adams, Methodist's employees breached the standard of care because, despite Sherman's repeated requests, no one attempted to locate or contact Dr. Coselli and request his instructions for her care.

██ Methodist contends that the report is inadequate as to the standard of care and breach because it does not identify the specific conduct called into question by each type of hospital employee involved, such as doctors, nurses, or admissions staff. Methodist argues that a global stan-

---

1. It is this fact that distinguishes this case from Methodist's authority, in which the doctor either never stated the standard of care for the non-physician health care providers at issue or did not explain the basis for any such knowledge. *See, e.g., Christus Health SE Tex. v. Broussard*, 267 S.W.3d 531, 535–36 (Tex. App.-Beaumont 2008, no pet.); *Simonson v.* *Keppard*, 225 S.W.3d 868, 872–73 (Tex.App.-Dallas 2007, no pet.); *Methodist Health Care Sys. of San Antonio, Ltd. v. Rangel*, No. 04–05–00500–CV, 2005 WL 3445994, at *2–3 (Tex.App.-San Antonio Dec. 14, 2005, pet. denied) (mem. op.); *cf. Bennett*, 256 S.W.3d at 814 (distinguishing *Simonson* ).

dard of care and assertion of breach for all actors is insufficient as a matter of law. Methodist is correct that an expert report may not state a global standard of care without explaining how that standard of care applies to the health care providers at issue and how they breached it. *See, e.g., Haddad v. Marroquin,* No. 13–07–014–CV, 2007 WL 2429183, at *4 (Tex.App.-Corpus Christi Aug. 29, 2007, pets. denied) (mem. op.); *Doades v. Syed,* 94 S.W.3d 664, 671–72 (Tex.App.-San Antonio 2002, no pet.). However, that is not what Dr. Adams's report does. Rather, in his report, Dr. Adams explains that in the context of this specific area of practice—that is, when a patient requests a specific doctor—the standard of care is the same for doctors and hospital staff. He then opines that the doctors and hospital staff in this case all breached the standard of care by failing to attempt to locate and contact Dr. Coselli in response to Sherman's requests. There is nothing inherently impermissible about concluding that different health care providers owed the same standard of care to Sherman and breached that duty in the same way.[2] *See Bennett,* 256 S.W.3d at 817 ("Although [the expert]'s opinion for each defendant is identical, he unquestionably provided an opinion for each hospital. That he held each defendant to the same standard of care, found the same type of breach, and analyzed causation in the same way does not render his opinion inadequate."); *Sanjar,* 252 S.W.3d at 466–67 (affirming trial court's refusal to dismiss based on expert report that applied same standard of care to multiple defendants). We conclude that Dr. Adams's report sufficiently explained why the standard of care

and breach elements were the same as to all the relevant health care providers. Therefore, the trial court did not abuse its discretion in denying Methodist's motion to dismiss on this basis, and we overrule Methodist's second and third issues.

## D. Causation

In its fourth issue, Methodist argues that Sherman's expert report is also insufficient as to causation. Dr. Adams opines that the stent is the ultimate cause of all Sherman's injuries and that Dr. Coselli would not have performed stent surgery. Thus, if Methodist had followed the standard of care and contacted Dr. Coselli, Sherman would never have received a stent, thereby avoiding her injuries. Methodist asserts that this opinion is speculative and conclusory because there is no basis for concluding what Dr. Coselli would have actually done and that, at most, any negligence by Methodist merely created a condition that allowed another's negligence to cause an injury. Methodist stresses that its actions were administrative rather than treatment-oriented and that it was the allegedly defective treatment that caused Sherman's injuries.

An expert report cannot be based on mere conclusions or speculation. *See Bowie,* 79 S.W.3d at 52; *Mosely v. Mundine,* 249 S.W.3d 775, 781 (Tex.App.-Dallas 2008, no pet.). Rather, the expert must explain the basis for his statements and link his conclusions to the facts. *Bowie,* 79 S.W.3d at 52; *Sanjar,* 252 S.W.3d at 465, 467–68. Dr. Adams does just that. He describes Marfan syndrome and explains why the use of a stent is contraindicated for Marfan syndrome patients and

---

**2.** Dr. Adams may be, as Methodist suggests, incorrect in this conclusion, but whether an expert's opinions are correct is an issue for summary judgment, not a motion to dismiss under chapter 74. *See, e.g., Sanjar,* 252 S.W.3d at 467 n. 6 (concluding that doctor's

arguments that he did not owe duty to patient as described in expert report was an issue for summary judgment rather than a motion to dismiss); *Wissa v. Voosen,* 243 S.W.3d 165, 169–70 (Tex.App.-San Antonio 2007, pet. denied) (same).

should not have been used on Sherman. Dr. Adams repeatedly states that no reasonable doctor, which presumably includes Dr. Coselli, would have performed stent surgery under such circumstances. That the chain of events leading from Methodist's actions to Sherman's injuries has many links does not render Dr. Adams's opinion insufficient because he explains and supports each step. *See Patel*, 237 S.W.3d at 905–06; *Farishta v. Tenet Healthsystem Hosps. Dallas, Inc.*, 224 S.W.3d 448, 454–55 (Tex.App.-Fort Worth 2007, no pet.). Methodist complains that Dr. Adams's opinion is not based on evidence, such as an affidavit or deposition from Dr. Coselli, stating exactly what *he* would have done had he been called when Sherman was admitted. Methodist cites no authority that discovery from a fact witness is required to support an initial expert report under chapter 74.[3] The report must provide supported opinions that are sufficient to give the trial court assurance that the claim has merit. *See Palacios*, 46 S.W.3d at 879; *Patel*, 237 S.W.3d at 904. Dr. Adams's well-supported conclusions about how a reasonably prudent doctor would have acted under the circumstances are sufficient to have given the trial court such assurances at this stage in the case. That discovery could later prove Dr. Adams wrong is not a basis for holding that his report is insufficient under chapter 74. *See Sanjar*, 252 S.W.3d at 467 n. 6; *Wissa v. Voosen*, 243 S.W.3d 165, 169–70 (Tex.App.-San Antonio 2007, pet. denied). We overrule Methodist's fourth issue.

**E. Sanctions**

▮ In her cross-issue, Sherman requests this court to sanction Methodist

for a frivolous appeal under Texas Rule of Appellate Procedure 45. Whether to grant sanctions for a frivolous appeal is a matter of discretion that this court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances. *See Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex.App.-Houston [14th Dist.] 2008, no pet.). If an appellant's argument on appeal fails to convince us but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment, sanctions are not appropriate. *Id.* Although Methodist's appeal lacks merit, we conclude that it is not frivolous, and we overrule Sherman's cross-issue.

**CONCLUSION**

The trial court did not abuse its discretion in denying Methodist's motion to dismiss based on its objections to Sherman's expert's qualifications and report. Having overruled all of Methodist's issues, we affirm the trial court's judgment.

---

**3.** Indeed, discovery is severely limited before the chapter 74 expert report requirement is met. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(s), (u) (Vernon Supp. 2008); *In re Jorden*, 249 S.W.3d 416, 418, 420–24 (Tex.

2008) (orig. proceeding); *In re Lumsden*, 291 S.W.3d 456, 461 (Tex.App.-Houston [14th Dist.] 2009, orig. proceeding); *In re Huag*, 175 S.W.3d 449, 456 (Tex.App.-Houston [1st Dist.] 2005, no pet.).