Opinion issued April 1, 2010

                                                                        

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00711-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



STEVEN PHILIP KLOERIS, M.D. AND RAJESWARI THISGARA
RAJAN, M.D., Appellants

 

V.

 

CHARLES AND JAMIE STOCKDALE, INDIVIDUALLY AND AS
REPRESENTATIVES OF THE ESTATE OF CHARLES WILLIAM STOCKDALE III, AND JAMES AND
TOREN DUKES, AS LEGAL GUARDIANS OF MINOR CHILDREN, ALLYSON LENORA STOCKDALE AND
CHARLES WILLIAM STOCKDALE, IV, Appellees

 

 



On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 2008-10581

 

 



MEMORANDUM OPINION

          Charles
(Chuck) and Jamie Stockdale, individually and as representatives of the estate
of Charles Stockdale III, and James and Toren Dukes, as legal guardians of
Allyson and Charles Stockdale IV (collectively, the Stockdales), sued Dr.
Steven Kloeris and Dr. Rajeswari Rajan for medical malpractice arising out of
Charles’s death from a prescription drug overdose.  The trial court overruled Dr. Kloeris and Dr.
Rajan’s objections to the sufficiency of the expert report and denied their
motions to dismiss the Stockdales’ claims. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2009).  In this interlocutory appeal, Dr. Kloeris and
Dr. Rajan contend that the trial court abused its discretion by denying their
motions to dismiss because the expert report served by the Stockdales does not represent
a good faith effort to comply with the statutory expert report requirements.  See id.
§ 74.351(r)(6). 
We hold that the expert report provides a fair summary of the standard
of care applicable to Dr. Kloeris, how he breached that standard, and how his
breach caused Charles Stockdale’s death. 
We also hold that the expert report does not present a fair summary of
the standard of care applicable to Dr. Rajan and how she breached the standard
of care, and we therefore remand the case to the trial court to determine
whether to grant the Stockdales one thirty-day extension to cure the
deficiencies of the report regarding Dr. Rajan’s conduct.

Background

Dr. Kloeris and Dr. Rajan both
practice as part of the Texas Gulf Coast Medical Group.  On November 29, 2005, Charles Stockdale first
visited Dr. Kloeris, complaining of severe anxiety and panic attacks.  Charles informed Dr. Kloeris that he was currently
taking 25 milligrams (mg) of atenolol once per day, vicoprofen, as needed, for
headaches, and 2 mg of alprazolam (Xanax) twice per day.  Dr. Kloeris diagnosed Charles with
generalized anxiety disorder, panic disorder, and migraines, and prescribed ninety
tablets of alprazolam (2 mg) and twenty-eight tablets of hydrocodone (Vicodin,
7.5 mg).  Charles returned to Dr. Kloeris
on December 15, 2005, sixteen days later, to receive prescription refills and
treatment for a staph infection.  On this
occasion, Dr. Kloeris prescribed an additional ninety tablets of alprazolam and
sixty tablets of hydrocodone (10 mg).

Charles’ wife, Kristen, had been a
patient of the Gulf Coast Medical Group for at least the previous year and a
half.  Her chart included a statement
that, on January 24, 2005, she “confided to the nurse
[at Clear Lake Regional Medical Center] that she regularly visits emergency
rooms complaining of different areas of pain in order to get Vicodin
[hydrocodone] prescriptions for her husband.” 
Most of Kristen’s medical records refer to her by her maiden name,
Arsement; however, the records do occasionally contain references to her as
“Kristen Stockdale” and also mention her husband, Charles Stockdale.  During December 2005, Kristen received
prescriptions from Dr. Kloeris and Dr. Rajan for hydrocodone, lorazepam, alprazolam,
and Soma.  On December 16, 2005, one day
after Charles’s second visit to Dr. Kloeris, he died of a prescription drug
overdose.  The Harris County Medical
Examiner listed Charles’s official cause of death as “the toxic effects of
Hydrocodone, Alprazolam, and Diazepam [Valium].”

Charles and Jamie Stockdale, Charles’s
parents, and James and Toren Dukes, the legal guardians of Charles’s children,
sued Dr. Kloeris and Dr. Rajan for negligence, gross negligence, and wrongful
death.  Within 120 days of filing suit,
the Stockdales served an expert report by Dr. Hugh Poindexter pursuant to Section
74.351 of the Civil Practice and Remedies Code. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)
(Vernon Supp. 2009).  Dr. Poindexter
stated that he is board certified by the American Board of Family Medicine, he
has been in private practice since 1977, first in Huntsville until 1989, and
then at the Kelsey-Sebold clinic in The Woodlands, where he has been the
managing physician since 1991, and he has treated “many patients with the same
or similar diagnosis as Mr. Stockdale[, and is] familiar with and [has]
prescribed the same medications prescribed to Mr. Stockdale by Dr. Kloeris, and
to his wife Kristen by Dr. Rajan.”  Dr.
Poindexter reviewed Charles’s autopsy report, the Texas Gulf Coast Medical
Group’s medical records for both Charles and Kristen, pharmacy records from six
different pharmacies for both Charles and Kristen, a prescription summary report,
an affidavit from plaintiff Chuck Stockdale, and the plaintiffs’ original
petition.

Dr. Poindexter described Charles’s
two visits to Dr. Kloeris and stated that Dr. Kloeris prescribed a total of 180
tablets of alprazolam and eighty-eight tablets of hydrocodone in a sixteen-day
time period.  Regarding Kristen, Dr.
Poindexter noted that her medical records included a statement from her that
she routinely visited emergency rooms to obtain hydrocodone for her husband,
and although both Dr. Kloeris and Dr. Rajan were aware or should have been
aware of this statement in their own records, they still prescribed excessive
amounts of medication to Kristen during November and December of 2005,
including hydrocodone and alprazolam.  Dr.
Poindexter opined that, based on all the records he reviewed, “Mr. Stockdale
died as a result of the toxic effects of hydrocodone, alprazolam and diazepam
prescribed by Dr. Kloeris and Dr. Rajan.”

According to Dr. Poindexter, “[b]ased
on the frequent and excessive prescriptions for hydrocodone and alprazolam to
Kristen and Charles” and Kristen’s admission that she procures prescription
medication for her husband, Dr. Kloeris “knew or should have known that Charles
Stockdale was abusing prescription drugs.” 
The standard of care “required Dr. Kloeris to recognize this addiction
and treat it” by either referring Charles to a substance abuse facility or
lowering the amounts of drugs prescribed. 
Dr. Poindexter then generally described the characteristics and effects
of alprazolam and hydrocodone, mentioning that both medications were
potentially dangerous and that “[t]he quantity of pills prescribed in such a
short period of time shows that caution was not used.”  Specifically, Dr. Kloeris prescribed more
than the recommended daily dose of alprazolam. 
Charles only visited the practice twice; however, “he was prescribed an
excessive amount of medication over a very short time span.”  Dr. Poindexter concluded by opining that
“[i]f Dr. Kloeris had not prescribed excessive quantities and dosages of these
drugs to Charles, or if he had referred him for drug abuse treatment, then, to
a reasonable degree of medical certainty, Mr. Stockdale would not have died.”

Regarding Dr. Rajan, Dr. Poindexter
stated that, based on the “frequent and excessive prescriptions for hydrocodone
and alprazolam” to Kristen by both doctors, and Kristen’s admission that she
obtained prescription drugs for her husband’s use, Dr. Rajan “knew or should
have known that Charles was abusing these drugs and that Kristen was attempting
to get them for her husband’s abuse.”  Dr.
Rajan should have recognized Charles’s abuse and should not have prescribed
hydrocodone and alprazolam to Kristen. 
According to Dr. Poindexter, “[h]ad Dr. Rajan not prescribed these drugs
to Kristen, then, to a reasonable degree of medical certainty, Mr. Stockdale
would not have died.”

Within twenty-one days of the filing
of the expert report, Dr. Kloeris and Dr. Rajan both objected to the
sufficiency of the report, arguing that Dr. Poindexter made conclusory
assumptions, failed to establish a causal link between the doctors’ conduct and
Charles’s death, and did not specify the standard of care applicable to Dr.
Rajan and how she breached that standard. 
The doctors then moved to dismiss the case with prejudice due to the
insufficiency of the report.  The trial
court overruled the doctors’ objections to the report and denied their motions
to dismiss.  Dr. Kloeris and Dr. Rajan
then filed this interlocutory appeal.  See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(9)
(Vernon 2008) (allowing interlocutory appeal when trial court “denies all or
part of the relief sought by a motion under Section 74.351(b)”).

 

Discussion

Standard of Review

          We
review the trial court’s decision on a section 74.351 motion to dismiss for
abuse of discretion.  Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001).  The trial court abuses its discretion if it
acts in an arbitrary or unreasonable manner without reference to any guiding
rules or principles.  Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003).  When we review
matters within the trial court’s discretion, we may not substitute our own
judgment for that of the trial court.  Bowie Mem’l Hosp. v. Wright,
79 S.W.3d 48, 52 (Tex. 2002) (per curiam).  The trial court does not abuse its discretion
merely because it decides a discretionary matter differently than we would in
similar circumstances.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985).

Sufficiency of Expert Reports

          Dr.
Kloeris and Dr. Rajan contend that the trial court abused its discretion by
denying their motions to dismiss because Dr. Poindexter’s report is vague,
conclusory, and does not represent a good faith effort to comply with the
expert report requirements of section 74.351(r)(6).  When a plaintiff brings a healthcare
liability claim, section 74.351 of the Civil Practice and Remedies Code requires
the plaintiff to serve each health care provider defendant with an expert
report within 120 days after the original petition is filed.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a) (Vernon Supp. 2009); Harris
County Hosp. Dist. v. Garrett, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st
Dist.] 2007, no pet.).  Section 74.351(r)(6) defines an “expert report” as a “written report by an
expert that provides a fair summary of the expert’s opinions as of the date of
the report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm, or
damages claimed.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).  A defendant
must file and serve any objections to the sufficiency of the report not later
than the twenty-first day after the date the report was served, failing which
all objections are waived.  Id. § 74.351(a).  The trial court shall grant a defendant’s
motion to dismiss only if, after a hearing, it appears to the court that the
expert report does not represent an objective good-faith effort to comply with
the definition of an expert report.  Id. § 74.351(l).

          In
determining whether the expert report represents an “objective good-faith
effort” to comply with the statute, we look only to the four corners of the report.  Palacios,
46 S.W.3d at 878. 
The expert report must fulfill two purposes to meet the “good-faith
effort” requirement:  (1) The report must
inform the defendant of the specific conduct that the plaintiff calls into
question; and (2) The report must provide a basis for the trial court to
conclude that the claims have merit.  See id. 
The report does not fulfill these purposes if it merely states the
expert’s conclusions about the standard of care, breach, and causation.  See id.  Instead, the expert must give, for each
defendant, a “fair summary of the expert’s opinions about the applicable
standard of care, the manner in which the care failed to meet that standard,
and the causal relationship between that failure and the claimed injury.”  Id.  The report must explain the basis of the
expert’s statements to link his conclusions to the facts.  Wright,
79 S.W.3d at 52 (quoting Earle v. Ratliff,
998 S.W.2d 882, 890 (Tex. 1999)). 
Although the report must include the expert’s opinion on each of the
elements enumerated in section 74.351(r)(6), the
expert report does not have to marshal all of the plaintiff’s proof.  Palacios,
46 S.W.3d at 878. 
The plaintiff also does not have to present evidence in the report as if
he were actually litigating the merits of the claim, and thus the report can be
informal and the information does not have to meet the same requirements as
evidence offered in a summary judgment proceeding or a trial.  Id. at 879.

A.   
Sufficiency of Report Regarding Dr.
Kloeris’s Conduct

Dr. Kloeris contends that Dr.
Poindexter’s report fails to articulate how Dr. Kloeris breached the standard
of care.  The expert report must state
the applicable standard of care as well as the manner in which the health care
provider failed to meet that standard of care. 
Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(r)(6).  Whether a defendant breached the standard of
care cannot be determined “absent specific information about what the defendant
should have done differently.”  Palacios, 46 S.W.3d at
880.  The expert is not required
to give a full statement of the standard of care and how it was breached, but
he must “set out what care was expected, but not given.”  Id.  With respect to Dr. Kloeris, Dr. Poindexter’s
report stated the following:

Based on the frequent and excessive prescriptions for
hydrocodone and alprazolam to Kristen and Charles by Dr. Kloeris and Dr. Rajan,
and the admission by Kristen that she frequented doctors to get hydrocodone for
her husband, Dr. Kloeris knew or should have known that Charles Stockdale was
abusing prescription drugs.  The medical
standard of care required Dr. Kloeris to recognize this addiction and treat it,
either by referring Charles to an abuse facility, or prescribing smaller
quantities and doses of hydrocodone and alprazolam solely to prevent
complications from the sudden withdrawal of these
drugs. . . . The quantity of pills prescribed in such a
short period of time shows that caution was not used.  The amount of alprazolam prescribed exceeds
the recommended daily dose.  Mr. Stockdale
had only had two visits for medical care to their clinic.  However, he was prescribed an excessive
amount of medication over a very short time span. . . . If
Dr. Kloeris had not prescribed excessive quantities and dosages of these drugs
to Charles, or if he had referred him for drug abuse treatment, then, to a
reasonable degree of medical certainty, Mr. Stockdale would not have died.

 

Dr. Poindexter specifically stated
that the standard of care required Dr. Kloeris to recognize Charles’ addiction
to prescription medication and treat it, by either referring him to a treatment
facility or lowering the quantities of drugs prescribed to avoid sudden
withdrawal.  He also stated that Dr.
Kloeris prescribed an “excessive amount of medication over a very short time
span,” more than the recommended daily dose of alprazolam, and Dr. Kloeris did
not refer Charles to a substance abuse facility.  “Magic words” are not necessary to provide a
fair summary of the standard of care, breach of that standard, and causation.  See
Wright, 79 S.W.3d at 53.  In determining whether the expert complied
with the statute, we consider the “substance of the opinions, not the technical
words used.”  Moore v. Sutherland, 107 S.W.3d 786, 790 (Tex. App.—Texarkana 2003,
pet. denied).  Dr. Poindexter’s report
gives fair notice to Dr. Kloeris that he breached the standard of care by prescribing
excessive amounts of hydrocodone and alprazolam in a short period of time and
by failing to refer Charles to a substance abuse facility.

          Dr.
Kloeris further contends that Dr. Poindexter’s report makes conclusory
assumptions and fails to establish a causal link between his conduct and
Charles’s death.  An expert report must
include a fair summary of the causal relationship between the defendant’s
failure to meet the appropriate standard of care and the injury, harm, or
damages claimed.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).  An expert
cannot merely state his conclusions or “provide insight” about the plaintiffs’
claims, but must instead “explain the basis of his statements to link his
conclusions to the facts.”  Wright, 79 S.W.3d at
52.  Dr. Kloeris relies on Wright for the contention that Dr.
Poindexter’s conclusion is based on speculation and conjecture.  After Wright was in a car accident, a
physician’s assistant at the hospital x-rayed Wright’s foot and knee and
diagnosed her with a fractured knee, but did not discover that Wright also
fractured her foot.  Id. at 50.  Another physician discovered this injury
approximately one month later, after surgeons already operated on Wright’s knee.  Id.  Wright needed two additional surgeries to
correct her foot injury.  Id. 
The expert report stated only that “if the x-rays would have been
correctly read and the appropriate medical personnel acted upon those findings
then Wright would have had the possibility of a better outcome.”  Id.
at 52–53.  The Texas Supreme Court upheld
the trial court’s dismissal of Wright’s claim, holding that the “report simply
opines that [Wright] might have had ‘the possibility of a better outcome’
without explaining how [the hospital’s] conduct caused injury to
[Wright].”  Id. at 54.  The expert report lacked information that linked
the conclusion—that Wright might have had a better outcome—to the breach—the
hospital’s failure to correctly read and act on the x-rays.  Id.

          Here,
Dr. Poindexter specifically stated that the standard of care required Dr.
Kloeris to recognize and treat Charles’s prescription drug addiction, and that
Dr. Kloeris breached the standard of care by not referring Charles to a
substance abuse facility and by prescribing excessive amounts of hydrocodone
and alprazolam in a very short period of time. 
Specifically, Dr. Kloeris prescribed a total of 180 tablets of
alprazolam and eighty-eight tablets of hydrocodone in a sixteen-day
period.  Dr. Poindexter concluded by
stating that, “[i]f Dr. Kloeris had not prescribed excessive quantities and
dosages of these drugs to Charles, or if he had referred him for drug abuse
treatment, then, to a reasonable degree of medical certainty, Mr. Stockdale
would not have died.”  In contrast to
Wright’s expert, who did not explain how the hospital’s failure to meet the
standard of care caused Wright’s injury, Dr. Poindexter sufficiently links his
conclusion, that Charles would not have died from a prescription drug overdose,
to Dr. Kloeris’s alleged breach, his failure to refer Charles to a substance
abuse facility and his excessive prescription of hydrocodone and alprazolam.  See
Wright, 79 S.W.3d at 53.  Dr. Poindexter’s statement of causation “is
not a conclusion or a statement of mere possibility, as in the Wright case, but is a positive statement
of fact.”  Moore, 107 S.W.3d at 791.  We hold that the trial court could have
reasonably determined that Dr. Poindexter’s report gave a fair summary of how
Dr. Kloeris caused Charles’s death and thus the trial court did not abuse its
discretion in denying Dr. Kloeris’s motion to dismiss.

According to Dr. Kloeris, although
Dr. Poindexter stated that he reviewed medical and pharmacy records, he
“clearly ignores” the records’ indication that numerous other doctors
prescribed similar medication to Charles and Kristen during the same time
period.  In determining whether an expert
report constitutes a “good-faith effort” to comply with the requirements of
section 74.351(r)(6), we look only to the four corners
of the report.  Palacios, 46 S.W.3d at 878.  Dr. Kloeris cites the Beaumont Court of
Appeals’ unpublished decision in Reddy v.
Seale for the proposition that we may look beyond the four corners of the
expert report when the health care provider can show that the expert’s opinion
is based on an inaccurate or incomplete reading of medical records.  See
No. 09-07-00372-CV, 2008 Tex. App. LEXIS 2000, at *9 n.1 (Tex. App.—Beaumont Mar.
20, 2008, no pet.) (mem. op.) (“Both Dr. Lutz and Dr.
Korn state in their respective reports that they reviewed Melody’s medical
records; thus, in determining whether their records represent a fair summary,
the records that they referred to are within our purview.”).  In deciding that a review of the medical
records is permissible, the Beaumont Court observed that although courts cannot
look outside an expert’s report to supply statutorily required information, the
challenge to the report in Reddy
addressed “whether the opinions in the expert reports are supported by the
medical records that the experts represented they reviewed.”  Id.  The Beaumont Court affirmed the trial court’s
denial of the doctors’ motion to dismiss, stating that even when it considered
the medical records, it could not “conclude that the
medical records necessarily preclude the opinions that were reached by Dr. Lutz
and Dr. Korn.”  Id.  Similarly, the medical
and pharmacy records relied upon by Dr. Poindexter do not preclude the opinions
that he reached.

Dr. Kloeris notes that Dr.
Poindexter’s report does not mention prescriptions written by other doctors or
the effects of these drugs on Charles, nor does Dr. Poindexter indicate how he
arrived at the conclusion that only Dr. Kloeris and Dr. Rajan’s prescriptions
caused Charles’s death.  A review of
Charles and Kristen’s pharmacy records demonstrates that from the beginning of
October 2005 to Charles’s death on December 16, 2005, the Stockdales filled
prescriptions for fifteen different prescription drugs from twenty-one
different doctors.  In the month
preceding Charles’s death, Charles received a total of 118 tablets of Hydrocodone:  30 (5 mg) from a Dr. Mougouris on December 14,
28 (5 mg) from Dr. Kloeris on November 29, and 60 (10 mg) from Dr. Kloeris on
December 15.  During this same time
period, Kristen received a total of 125 tablets of Hydrocodone:  23 total from Doctors Totz, Kung, and Le on
November 19, 27, and 28, respectively; 21 from Dr. Rajan on December 2; 21 from
Dr. Rajan on December 8; and 60 from Dr. Kloeris on December 12.  Dr. Kloeris also prescribed 90 tablets of
Alprazolam to Charles on November 29, 60 tablets to Kristen on December 12, and
90 more to Charles on December 15. 
Charles died on December 16 from the “toxic effects of hydrocodone, alprazolam
and diazepam.”  Even though the medical
and pharmacy records reflect that Charles and Kristen received large quantities
of prescription drugs from multiple doctors, the records also reflect that Dr.
Kloeris prescribed the majority of the hydrocodone and alprazolam that Charles
received in the month prior to his death. 
Specifically, in the sixteen days leading up to Charles’s death, Dr.
Kloeris prescribed eighty-eight tablets of hydrocodone and 180 tablets of alprazolam
to Charles.  We conclude that the
pharmacy records of Charles and Kristen do not preclude Dr. Poindexter’s
opinion that Dr. Kloeris’s excessive prescription of hydrocodone and alprazolam
caused Charles’s death.

Dr. Kloeris further contends that Dr.
Poindexter’s expert report is speculative, conclusory, and insufficient as a
matter of law because he states that Charles died due to the “toxic effects of
hydrocodone, alprazolam, and diazepam prescribed by Dr. Kloeris and Dr. Rajan,”
but neither of these doctors prescribed diazepam to Charles or Kristen.  Whether an expert’s opinions are correct is
an issue for summary judgment, not a Chapter 74 motion to dismiss.  Methodist Hosp. v. Shepherd-Sherman, 296 S.W.3d 193, 199 n.2 (Tex.
App.—Houston [14th Dist.] 2009, no pet.).  As the San Antonio Court of Appeals noted,
“[a] motion to dismiss seeks to demonstrate that a plaintiff has not satisfied
the procedural requirements of
Chapter 74, while a motion for summary judgment seeks to demonstrate that the substance of the claim lacks
merit.”  Wissa v. Voosen, 243 S.W.3d 165, 169
(Tex. App.—San Antonio 2007, no pet.). 
An issue such as the fact that neither Dr. Kloeris nor Dr. Rajan
prescribed diazepam to Charles or Kristen but the Harris County Medical
Examiner found that diazepam contributed to Charles’s death is a substantive
issue affecting the merits of the Stockdales’ claim.  Our focus at this stage of the proceedings is
whether Dr. Poindexter’s expert report provided a fair summary of the standard
of care applicable to Dr. Kloeris, how Dr. Kloeris breached that standard, and how
Dr. Kloeris’s breach caused Charles’ death, not whether Dr. Poindexter is
ultimately correct in his opinions and assertions.  See id.
at 169–70; see
also Apodaca v. Russo, 228 S.W.3d 252, 255 (Tex. App.—Austin 2007, no pet.)
(“The expert report is not required to prove the defendant’s liability, but
rather to provide notice of what conduct forms the basis for the plaintiff’s
complaints.”).

Even though Dr. Poindexter did not
address the prescriptions written by other doctors or the fact that Dr. Kloeris
did not prescribe diazepam, in the “History” section of his report, he detailed
the amount of hydrocodone and alprazolam prescribed to Charles by Dr. Kloeris,
as well as the short time period in which Dr. Kloeris prescribed that
medication.  Thus, this report linked Dr.
Poindexter’s conclusions on causation to the specific facts of this case.  See
Wright, 79 S.W.3d at 52.  This report fulfilled the twin purposes that Palacios requires to constitute an
“objective good-faith effort” to comply with Chapter 74:  (1) it informed Dr. Kloeris of the specific
conduct the Stockdales called into question; and (2) it provided a basis for
the trial court to conclude that the claim has merit.  Palacios,
46 S.W.3d at 879. 
The trial judge could have reasonably determined that this report gave a
fair summary of each of the statutory requirements, and therefore did not abuse
its discretion by denying Dr. Kloeris’s motion to dismiss.

B.   
Sufficiency of Report Regarding Dr. Rajan’s
Conduct

Dr. Rajan contends that Dr.
Poindexter’s report does not articulate a specific standard of care applicable
to her and contains a speculative conclusion regarding causation without any
supporting evidence.  Dr. Poindexter’s
report states the following relating to Dr. Rajan:

Based on the frequent and excessive prescriptions for
hydrocodone and alprazolam to Kristen by Dr. Kloeris and Dr. Rajan, and the
admission by Kristen that she frequented doctors to get hydrocodone for her
husband, Dr. Rajan knew or should have known that Charles was abusing these
drugs and that Kristen was attempting to get them for her husband’s abuse.  Dr. Rajan should have recognized this abuse
and not prescribed Kristen hydrocodone and alprazolam.  Had Dr. Rajan not prescribed these drugs to
Kristen, then, to a reasonable degree of medical certainty, Mr. Stockdale would
not have died.

 

The standard of care for a physician
is what a physician of ordinary prudence would do in the same or similar
circumstance.  Moore, 107 S.W.3d at 789.  We cannot determine whether a defendant
breached her duty to a patient “absent specific information about what the
defendant should have done differently.” 
Palacios, 46
S.W.3d at 880.  We do not require
a full statement of the standard of care and how the defendant breached that
standard, but the “fair summary” must state what “care was expected, but not
given.”  Id.

Dr. Poindexter opines that Dr. Rajan
“knew or should have known” that Charles was abusing prescription drugs and that
Kristen was obtaining these drugs for her husband’s use, and therefore Dr. Rajan
should not have prescribed hydrocodone and alprazolam to Kristen.  Dr. Poindexter does not, however, state what
the standard of care specifically required Dr. Rajan to do to determine that
Charles Stockdale, who was not her patient, was currently abusing prescription
medication, and that she should not prescribe these drugs to Kristen, who went
by a different last name in most of her medical records and who first presented
to Dr. Rajan as an assault victim.  The
report does not, for example, specify what Dr. Rajan should have done to learn
of Charles’s prescription drug abuse, what she should have done to learn of
Kristen’s drug-seeking behavior, what she should have done to learn that
Charles and Kristen were currently married, or how she should have treated
Kristen, her patient, for her complaints in these circumstances.  Without specific information of this nature,
Dr. Poindexter’s report does not provide a fair summary of the applicable standard
of care and how she breached that standard sufficient to give Dr. Rajan notice
of the specific conduct complained of by the Stockdales.  See
Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 859–60 (Tex. App.—Houston [1st
Dist.] 2006, no pet.).  In this case, the
trial court had no discretion but to conclude that the expert report does not
represent an “objective good-faith effort” to provide a fair summary of the
standard of care applicable to Dr. Rajan and how she breached that standard as
required by section 74.351(r)(6).  See Palacios, 46
S.W.3d at 880.

          Dr.
Rajan requests that we reverse and render judgment that the trial court dismiss the Stockdales’ claims against her with
prejudice.  The Civil Practice and
Remedies Code provides, however, that “[i]f an expert report has not been
served within [120 days of the plaintiff filing suit] because elements of the
report are found deficient, the court may grant one 30-day extension to the
claimant in order to cure the deficiency.” 
Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(c).  According
to the Texas Supreme Court, the plain language of this section “permits one
thirty-day extension when the court of appeals finds deficient a report that
the trial court considered adequate.”  Leland v. Brandal, 257
S.W.3d 204, 207 (Tex. 2008).  We
have discretion to remand consideration of the extension issue to the trial court.  See id.
at 208.  We
therefore remand the case to the trial court to determine whether to grant the
Stockdales one thirty-day extension to cure the deficiencies of the report
regarding Dr. Rajan’s conduct.

Sanctions for Frivolous Appeal

          The
Stockdales request that we sanction Dr. Kloeris for filing a frivolous appeal
pursuant to Rule 45 of the Texas Rules of Appellate Procedure.  See
Tex. R. App. P. 45 (“If the court
of appeals determines that an appeal is frivolous, it may . . . award
each prevailing party just damages.”). 
The Stockdales contend that Dr. Kloeris’s appeal is “patently
frivolous,” since Dr. Kloeris agreed to be sanctioned by the Texas Medical
Board (TMB) for, among other things, his treatment of Charles Stockdale.  An agreed order from the TMB is considered a
settlement agreement under Rule 408 of the Texas Rules of Evidence.  Tex. Occ. Code Ann.
§ 164.002(d) (Vernon Supp. 2009).  Settlement agreements are not admissible to
prove liability or invalidity of the claim or amount, but may be admissible
when “offered for another purpose.”  Tex. R. Evid. 408.  Determining whether an appeal regarding the
sufficiency of an expert report is frivolous when the doctor has agreed to be
sanctioned for the conduct at issue does not relate to liability or validity of
the claim or amount, and is therefore a permissible purpose for which a
settlement agreement can be considered.

          When
determining whether an appeal is frivolous, we “look at the record from the
viewpoint of the advocate and decide whether he had reasonable grounds to
believe the case could be reversed.”  Smith v. Brown, P.C., 51 S.W.3d 376, 381
(Tex. App.—Houston [1st Dist.] 2001, pet. denied); see
also Goss v. Houston Cmty. Newspapers, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.)
(“If an appellant’s argument on appeal fails to convince us but has a
reasonable basis in law and constitutes an informed, good-faith challenge to
the trial court’s judgment, sanctions are not appropriate.”).  Dr. Kloeris’s contention that Dr.
Poindexter’s report is insufficient centers around the fact that the report
does not address records upon which Dr. Poindexter stated he relied but undermine
his conclusion regarding causation. 
Although we hold that the medical and pharmacy records from other
doctors, relied upon but not mentioned by Dr. Poindexter in his report, do not
preclude his conclusions on causation, Dr. Kloeris asserted reasonable grounds for
an appeal.  See Reddy, 2008 Tex. App. LEXIS 2000, at *9 n.1 (stating that
appellate courts can consider additional records to determine whether the
expert’s opinions are supported by the records he reviewed).  We decline to conclude that Dr. Kloeris’s
appeal is frivolous.

Conclusion

We hold that Dr. Poindexter’s expert
report provides a fair summary of the standard of care applicable to Dr.
Kloeris, how Dr. Kloeris breached that standard, and how Dr. Kloeris’s breach
caused Charles Stockdale’s death.  We
therefore affirm the order of the trial court denying Dr. Kloeris’s motion to
dismiss.  We further hold that Dr.
Poindexter’s report does not provide a fair summary of the standard of care
applicable to Dr. Rajan and how her conduct breached that standard with respect
to Charles Stockdale, who was not her patient. 
We therefore remand the case to the trial court to determine whether to
grant the Stockdales a thirty-day extension to cure the deficiencies in the
expert report regarding Dr. Rajan’s conduct.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.