

NUMBER 13-13-00342-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JENNIFER J. GARZA, M.D. AND
JENNIFER GARZA, M.D., P.A.,                                              Appellants,

v.

RAFAEL DELEON AND VANESSA
DELEON AS PARENTS AND NEXT
OF FRIEND OF E.D., A MINOR CHILD,                                    Appellees.

On appeal from the County Court at Law No. 4
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

This is an interlocutory appeal from an order denying appellant Jennifer Garza,

M.D.'s motion to dismiss under section 74.351(b) of the Texas Civil Practice and

Remedies Code.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011); § 51.014(a)(9) (West 2008).  We affirm.

## I. BACKGROUND

Appellees[1] brought a healthcare liability claim against Dr. Garza in connection with an elective circumcision that she performed on their four-year-old minor son, E.D. E.D.'s pediatrician recommended that E.D. be circumcised because of the conditions of phimosis (tight foreskin) and redundant foreskin.  Appellees alleged that Dr. Garza overused an electrocautery device during the circumcision and caused E.D. to develop two holes (fistulas) on his penis that required reconstructive surgery.

Specifically, appellees alleged that Dr. Garza first told them that the circumcision had been successful but that there had been a small amount of bleeding that she had been able to stop.  A nurse who came to change E.D.'s bandages in the recovery room noticed that E.D. "still had a lot of bleeding" that did not appear to be stopping.  Dr. Garza returned E.D. to the operating room under anesthesia and found that there was "general ooze" of blood from under the head of the penis but without a specific source. Dr. Garza stated that she "gently used" an electrocautery device along with hemostatic agents on the head of the penis to stop the bleeding.  Appellees alleged that within two to three days of being released from the hospital, E.D. was voiding urine through two holes in his penis and that the "oozing bleeding" continued.  Appellees took E.D. to the emergency room for blood in his urine and for pain that they allege was so severe that he was unable to sleep.  Appellees were eventually referred to a pediatric urologist who diagnosed the holes as "urethrocutaneous fistulas," holes between the urethra and the

---

[1] Appellees are Rafael and Vanessa DeLeon, acting as the parents and next friends of E.D., their minor son.  Both parties refer to E.D. by his initials, and we will do the same.

2

skin of the penis. After waiting approximately six months for healing and to permit the scar tissue to soften, E.D. underwent reconstructive surgery that closed the holes without any bleeding issues[2], but the surgeon also noted that E.D. might require further surgeries if complications arose.

Appellees brought suit on behalf of E.D., alleging that Dr. Garza was negligent for: (1) "failing to properly perform the circumcision"; (2) "causing excessive bleeding during the circumcision procedure"; (3) "removing excessive tissue during the circumcision procedure"; (4) "using excessive electrocautery during the second procedure"; (5) "injuring E.D.'s glans, urethra and skin of his penis"; and (5) generally "failing to provide proper care and treatment" to E.D. Appellees filed three separate expert reports from Dr. James E. Moulsdale, M.D., a pediatric urologist from Maryland. The trial court overruled Dr. Garza's objections to the third expert report, and it issued an order denying Dr. Garza's motion to dismiss. This appeal followed. *See id.* § 51.014(a)(9) (allowing for an interlocutory appeal of the denial of a motion to dismiss brought under section 74.351(b)).

## II. DISCUSSION

By two issues, Dr. Garza argues that the trial court abused its discretion in denying her motion to dismiss because the third expert report is not an objective good faith effort to comply with the definition of an expert report in section 74.351(r)(6) of the Texas Civil Practice and Remedies Code. *See id.* § 74.351(r)(6), (l).

---

[2] Blood tests ruled out the possibility that E.D. had a blood disorder that would have prevented his blood from clotting.

3

### A. Standard of Review and Applicable Law

The Texas Medical Liability Act requires that a plaintiff in a suit against a physician or health care provider must serve an expert report on the defendant or the defendant's attorneys within 120 days after the filing of the first petition. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the defendant objects to the adequacy of the report and files a motion to dismiss, the trial court should grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(l), (r)(6). We review a trial court's decision on a motion to dismiss under section 74.351(b) for abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006).

In the context of a motion to dismiss under section 74.351(b), "[a] good faith effort . . . simply means a report that does not contain a material deficiency." *Samlowski v. Wooten*, 332 S.W.3d 404, 409–10 (Tex. 2011). "A valid expert report . . . must provide (1) a fair summary of the applicable standards of care; (2) the manner in which the physician or health care provider failed to meet those standards; and (3) the causal relationship between that failure and the harm alleged." *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6)). A plaintiff is not required to present evidence in the report as if he was arguing the merits, but it is not enough that the report merely state the expert's conclusions about the three elements. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001). "Rather, the expert must explain the basis of his statement to link his conclusions to the facts." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). The report

4

must contain information that is sufficient to fulfill two purposes: "[f]irst, the effort must inform the defendant of the specific conduct the plaintiff has called into question. Second, . . . the report must provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879. "Therefore, an expert report that includes all the required elements, and that explains their connection to the defendant's conduct in a non-conclusory fashion, is a good faith effort." *Samlowski*, 332 S.W.3d at 410 (citations omitted); *see Otero v. Leon*, 319 S.W.3d 195, 199 (Tex. App.—Corpus Christi 2010, pet. denied).

### B. Standard of Care, and Departure Therefrom

By her first issue, Dr. Garza argues that all three reports are inadequate because they do not include an adequate statement of the applicable standard of care and the alleged departure from the standard of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). We will primarily refer to the third report because it includes everything in the first two reports and also provides a more thorough discussion of Dr. Moulsdale's opinions and the basis for them.

In his report, Dr. Moulsdale opined that "[t]he standard of care applicable to all circumcisions is to perform the circumcision by removing an appropriate amount of foreskin without excessive bleeding and without injury to the urethra or glans penis." Specifically,

> the physician must avoid incising the urethra with a cutting agent, or with a suture placed for hemostasis. In other words, fistulas may result from . . . either accidental crushing of the urethra by the circumcision clamp, or from a stitch placed in the underside of the penis to control excessive bleeding at the site of the frenulum. Additionally, a fistula can be caused by incising the urethra with the scalpel or electrocautery device.

5

Dr. Garza argues that the report is deficient because it does not explain "what [she] was specifically required to do to avoid injury while removing foreskin," does not quantify "how much foreskin was appropriate to remove and how much was too much" and does not discuss "what specifically [she] was required to do in exercising 'great care' while using electrocautery so as not to damage the urethra or the glans." Dr. Garza argues that "[w]ithout this information, [she] is left to guess what specific action she was required to take."

Dr. Garza also argues that Dr. Moulsdale's statement of the departure from the standard of care is insufficient because it is conclusory. Dr. Moulsdale states in the report that in his opinion:

> Dr. Garza breached the standard of care here by using the electrocautery device improperly and too aggressively. She removed too much skin, burned [E.D.'s] penis by overcauterizing it, and she also created two fistulas in his urethra. This in turn caused substantial bleeding and the later complications that [E.D.] experienced and continues to experience . . . . Urethral fistulas are not a normal or non-negligent result of circumcision. Rather, in my experience and opinion, it is a breach of the applicable standards of care to conduct the circumcision in such a way that results in fistulas. It indicates that the physician failed to carefully conduct the surgery, removing too much skin, cutting into the urethra or crushing the urethra—or all three.

Dr. Garza argues that this statement is conclusory because it does not give her notice of the claims against her by explaining how much skin should have been removed and how much use of electrocautery is reasonable and how much is excessive. Dr. Garza asserts that the report therefore is nothing but an extended conclusory statement which "impermissibly concludes that a bad result equates to negligence."[3]

_____

[3] Dr. Garza cites to section 74.303(e)(2) of the Texas Civil Practice and Remedies Code for the proposition that "[a] finding of negligence may not be based solely on the evidence of a bad result to the

6

However, appellees do not need to present evidence in their expert report as if they were fully litigating the merits. *See Certified E.M.S., Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013) (observing that "the purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits") (quotation marks omitted); *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011); *Palacios*, 46 S.W.3d at 878 (rejecting a summary judgment standard of review for reviewing motions to dismiss under Chapter 74). The report must only contain a "fair summary" of the standard of care and the alleged departure from it that is sufficient to inform Dr. Garza of the conduct that appellees are calling into question and to provide a basis for the trial court to conclude that the claims against Dr. Garza are meritorious. *See Potts*, 392 S.W.3d at 630; *Palacios*, 46 S.W.3d at 878. Having reviewed Dr. Moulsdale's report in its entirety, we conclude that the trial court was justified in finding that it discusses the two elements of the standard of care and breach with sufficient specificity to fulfill the dual purposes of the expert report requirement. The report states the actions Dr. Garza was supposed to avoid doing when conducting the surgery: cutting into the urethra with either a scalpel or an electrocautery tool, crushing the urethra with the circumcision clamp, or puncturing the urethra with a suture, and that the injuries E.D. suffered were the proximate result of Dr. Garza departing from the applicable standard of care by doing at least one of those things. Dr. Moulsdale's report therefore apprises Dr. Garza of the conduct that is being called into question and provides enough information to

claimant." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.303(e)(2) (West 2011). However, section 74.303(e)(2) does not address expert reports; rather, it addresses the proper instructions that must be given to juries trying the merits of a health care liability claim. *See id.* § 74.303(e) ("In any action on a health care liability claim that is tried by a jury in any court in this State, *the following shall be included in the court's written instructions to the jurors.*") (emphasis added).

7

provide a basis for the trial court to conclude that the claims are meritorious. *See Potts*, 392 S.W.3d at 630; *Palacios*, 46 S.W.3d at 879; *see also Benson v. Vernon*, 303 S.W.3d 755, 758, 760 (Tex. App.—Waco 2009, no pet.) (rejecting a similar attack on an expert report in a case where the plaintiff suffered complications during a breast augmentation procedure and where the expert report opined that the standard of care required the surgeon to, among other things, cut only in the "normal dissection plane" without "entering" a specific cavity in the breast, but without specifying in the report "how the appropriate depth and dissection plane are determined").

We overrule Dr. Garza's first issue.

### C. Causation

By her second issue, Dr. Garza argues that the report was insufficient because it did not include any opinion on whether E.D.'s injuries were foreseeable. Dr. Garza asserts that foreseeability is an element of the causation analysis that is required by section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). In the past, this Court has agreed with the Dallas Court of Appeals in concluding that there is no authority that "an expert report must opine on whether the specific injuries sustained by the claimant could have been foreseen by the healthcare defendants." *Rio Grande Reg. Hosp. v. Ayala*, No. 13-11-00686-CV, 2012 WL 3637368, at *15 (Tex. App.—Corpus Christi Aug. 24, 2012, pet. denied) (mem. op.) (citing *Adeyemi v. Guerrero*, 329 S.W.3d 241, 246 (Tex. App.—Dallas 2010, no pet.)); *see Valley Reg'l. Med. Ctr. v. Gonzalez*, No. 13-12-00572-CV, 2013 WL 2298470, at *3 (Tex. App.—Corpus Christi May 23, 2013, no pet.) (mem. op.) (declining to revisit our holding in *Ayala*). Dr. Garza requests overruling these precedents because "the causal relationship in a health care

8

liability claim consists of both cause-in-fact and foreseeability." All of the cases cited by Dr. Garza do not discuss the expert report requirement, but refer to elements that must be found by the factfinder to support a verdict in a healthcare liability claim.[4] Dr. Garza makes essentially the same argument that we rejected recently in *Gonzalez* but gives this Court no reason to revisit our holding in that case. *See Gonzalez*, 2013 WL 2298470, at *3 (declining to revisit our holding in *Ayala*). Accordingly, we overrule Dr. Garza's second issue. *See Adeymei*, 329 S.W.3d at 246; *Gonzalez*, 2013 WL 2298470, at *3; *Ayala*, 2012 WL 3637368, at *15.

We overrule Dr. Garza's second issue.

### III. MOTION FOR SANCTIONS

Appellees filed a separate motion in which they request that this Court sanction Dr. Garza under Rule 45 for bringing a frivolous appeal. *See* TEX. R. APP. P. 45.

### A. Applicable Law

"Under Rule 45, we may award a prevailing party just damages if we objectively determine that an appeal is frivolous after considering the record, briefs or other papers filed in this Court." *Lookshin v. Feldman*, 127 S.W.3d 100, 106 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing TEX. R. APP. P. 45). "To determine if an appeal is frivolous, we review the record from the viewpoint of the advocate and decide whether there were reasonable grounds to believe the case could be reversed." *London v. London*, 349 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The decision whether to grant sanctions is committed to this Court's discretion, a power that

---

[4] Both cases cited by Dr. Garza were decided in the context of a challenge to a jury verdict in a health care liability case. *See Columbia Rio Grande Healthcare, L.P., v. Hawley*, 284 S.W.3d 851, 860 (Tex. 2009); *Grider v. Mike O'Brien, P.C.,* 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

we exercise "with prudence and caution and only after careful deliberation in truly egregious circumstances." *Methodist Hosp. v. Shepherd-Sherman*, 296 S.W.3d 193, 200 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "If an appellant's argument on appeal fails to convince us but has a reasonable basis in law and constitutes an informed . . . challenge to the trial court's judgment, sanctions are not appropriate." *Id.*

**B. Analysis**

Appellees argue that this appeal is frivolous because: (1) the report plainly contains an adequate statement of the three statutory elements, and there is even a case, *Baylor College of Medicine v. Pokluda*, 283 S.W.3d 110 (Tex. App.—Houston [14th Dist.] 2009, no pet.), upholding the sufficiency of an expert report against similar attacks; and (2) Dr. Garza argued to this Court about whether appellees' expert was required to address whether E.D.'s injuries were foreseeable, even though this Court has already twice rejected a similar argument.

While we were not persuaded by Dr. Garza's arguments regarding the adequacy of the expert report in this case, after a thorough review of the record we conclude that Dr. Garza had a reasonable basis in law to challenge the trial court's ruling. Even if *Pokluda* was directly on point, as a decision of one of our sister courts it is not binding authority that appellant could reasonably try to persuade us that we should not follow. *See Thomas v. Cook*, 350 S.W.3d 382, 395 n.2 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (observing that cases from other appellate courts "are persuasive but not binding on other intermediate appellate courts of this state"). Regarding Dr. Garza's request that we overrule our precedent in *Ayala* and *Gonzalez*, although we reject the request, we note that it is not necessarily frivolous for an appellant to ask this Court to

10

revisit our past precedent. *See Kingston v. Helm*, 82 S.W.3d 755, 760 (Tex. App.—Corpus Christi 2002, pet. denied) (reasoning that "although consideration of stare decisis normally counsel against overruling an opinion of this court after such a short time, a clearly erroneous decision should be corrected") (internal citations omitted). We will impose sanctions in only the most egregious cases, *Methodist Hosp.*, 296 S.W.3d at 200, and we conclude that these are not such circumstances. We deny appellees' motion for sanctions under Rule 45.

## IV. CONCLUSION

We affirm the order of the trial court.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
19th day of December, 2013.