**Michael Fawzy WISSA, M.D., Appellant,**

**v.**

**Mark VOOSEN, Karen Voosen, and Mary Elizabeth ("Emmy") Voosen, Appellees.**

**No. 04–07–00386–CV.**

Court of Appeals of Texas, San Antonio.

Sept. 26, 2007.

Diana L. Faust, R. Brent Cooper, Michelle E. Robberson, Cooper & Scully, P.C., Dallas, TX, Karen R. Roberts, Rosemary L. Hollan, Hollan Law Firm, P.C., San Antonio, TX, for Appellant.

Jon T. Powell, The Powell Law Firm, Brant S. Mittler, M.D., J.D., San Antonio, TX, for Appellees.

Sitting: CATHERINE STONE, Justice,
PHYLIS J. SPEEDLIN, Justice,
STEVEN C. HILBIG, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN,
Justice.

In this interlocutory appeal, we are asked to determine if the trial court abused its discretion when it denied Dr. Michael Wissa's motion to dismiss the underlying medical malpractice suit against him. Finding no error, we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this appeal are essentially undisputed. Mary Elizabeth Voosen ("Emmy"), a 16 year old high school student, athlete, and cheerleader sought medical evaluation and treatment for chronic right ankle pain. Initially, Marque Allen, D.P.M., a podiatrist employed by Sports Medicine Associates of San Antonio, evaluated Emmy and determined that her ankle was unstable due to a ligament injury. To correct the problem, Dr. Allen performed a surgical procedure on Emmy's right ankle on October 29, 2004. Subsequently, on November 29, 2004, Dr. Allen saw Emmy in follow up and scheduled a second surgery on Emmy's ankle for the next day. Immediately prior to her second surgery, Emmy met with the anesthesiologist for the procedure, Dr. Michael Wissa. Dr. Wissa performed a pre-anesthesia evaluation prior to administering anesthesia and also documented the patient's required history and physical examination. The history and physical form that Dr. Wissa completed listed him as "Examining M.D. for Podiatry."[1] Dr. Wissa did not treat Emmy again after her second surgery.

Emmy developed complications at the surgical site. She and her parents ultimately sued five defendants, including Dr. Wissa, for medical negligence, alleging failure to properly diagnose and treat her wound infection resulting in unnecessary surgeries, chronic infection, pain and suffering and impairment to her ankle. The Voosens timely served the expert report of Marvin Brown, M.D. Dr. Wissa objected to Dr. Brown's report as it pertained to him and filed a motion to dismiss under section 74.351(b) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2006). The trial court denied Dr. Wissa's motion and this interlocutory appeal was perfected.

In one issue, Dr. Wissa maintains the trial court abused its discretion in denying his motion to dismiss the medical malpractice suit against him. Dr. Wissa first argues the trial court failed to determine as a matter of law that Dr. Wissa owed no legal duty to Emmy as a podiatrist or surgeon.[2] Specifically, Dr. Wissa maintains the standard of care set forth in Dr. Brown's report does not apply to him in his limited role as an anesthesiologist. In a related argument, Dr. Wissa also maintains Dr. Brown's expert report fails to establish that he is qualified to render an opinion about the standards of care applicable to Dr. Wissa in his role as an anes-

[1]. A podiatrist is licensed to practice podiatry. TEX. OCC.CODE ANN. § 202.001(3)(A) (Vernon 2004). "Podiatry" means the treatment of or offer to treat any disease, disorder, physical injury, deformity, or ailment of the human foot by any system or method. *Id.* § 202.001(a)(4) (Vernon 2004).

[2]. Dr. Wissa also argues that "the trial court erroneously relied on expert testimony about duty to impliedly find Dr. Wissa owed the duties of a podiatrist or surgeon even though Dr. Wissa only formed a physician-patient relationship for the purposes of administering anesthesia to Emmy...."

thesiologist. In response, the Voosens contend Dr. Brown's report meets the statutory requirements necessary for an expert report under section 74.351(b) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

## APPLICABLE LAW AND STANDARD OF REVIEW

In a medical malpractice lawsuit such as the one before us, a claimant must timely provide each defendant health care provider an expert report with the expert's curriculum vitae. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp.2006). The Chapter 74 expert report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2006). In order to comply with the statutory requirements, the report must both inform the defendant of the specific conduct the plaintiff has called into question, and provide a basis for the trial court to conclude that the claims have merit. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex.2001); *Tovar v. Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P.*, 185 S.W.3d 65, 67–68 (Tex.App.-San Antonio 2005, pet. denied).

If the affected physician or health care provider challenges the report's adequacy by a motion to dismiss, the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM.CODE ANN.

§ 74.351(*l*) (Vernon Supp.2006). In determining whether the expert report constitutes a good faith attempt to comply with the statute, we look no further than the report itself. *See Palacios*, 46 S.W.3d at 878 (the only information relevant to the inquiry is within "the four corners" of the report). While the report need not marshal all of the plaintiff's proof, it must include the expert's opinion on each of the elements identified in the statute: standard of care, breach, and causation. *Id.* at 878–79; *Tovar*, 185 S.W.3d at 68. The report need not present evidence as if the plaintiff were actually litigating the merits, but it must do more than merely state the expert's conclusions about the statutory requirements. *Palacios*, 46 S.W.3d at 879. In addition to expressing a fair summary of the expert's opinions on the three elements of an expert report, the report must be rendered by an expert qualified to testify under section 74.401. TEX. CIV. PRAC. & REM.CODE ANN. § 74.401 (Vernon 2005). We review a trial court's determination about the adequacy of an expert report under an abuse of discretion standard. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Id.*

## DISCUSSION

Dr. Wissa first argues the trial court erred in failing to properly analyze and apply the law regarding legal duty. He maintains his duty to Emmy was limited because he was only engaged to provide anesthesiology services; therefore, the trial court should have made a threshold determination that Dr. Wissa owed no legal duty to Emmy as a podiatrist or surgeon. Dr. Wissa cites several cases for the legal proposition that the existence of duty in a medical negligence case is a

question of law the trial court must make before it considers the applicable standard of care. *See, e.g., Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998) (threshold question for court is whether treating physicians have legal duty to third parties to warn epileptic patients not to drive); *St. John v. Pope,* 901 S.W.2d 420, 423 (Tex. 1995) (duty of on-call physician consulted over telephone must be decided before issue of standard of care). None of the cases cited by Dr. Wissa, however, involve a Chapter 74 expert report. Instead, each case cited by Dr. Wissa arises in the context of a summary judgment proceeding, which we find readily distinguishable from a motion to dismiss filed under section 74.351. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (expert report must address each element identified in the statute-applicable standard of care, breach and causal relationship) *with* TEX.R. CIV. P. 166a(c) (summary judgment is proper where no genuine issue exists as to any material fact). While the purposes of a motion to dismiss under section 74.351 and a motion for summary judgment are similar in some respects, their scope is clearly different. *See Farishta v. Tenet Healthsystem Hospitals Dallas, Inc.,* 224 S.W.3d 448, 453 (Tex.App.-Fort Worth 2007, no pet.) (noting that both seek to eliminate frivolous claims). A motion to dismiss seeks to demonstrate that a plaintiff has not satisfied the *procedural* requirements of Chapter 74, while a motion for summary judgment seeks to demonstrate that the *substance* of the claim lacks merit. *See Smalling v. Gardner,* 203 S.W.3d 354, 367 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *see also Apodaca v. Russo,* 228 S.W.3d 252, 255 (Tex.App.-Austin 2007, no pet.) (expert report is not required to prove defendant's liability, but rather to provide notice of what conduct forms the basis for plaintiff's complaints); *see also Palacios,* 46 S.W.3d at 879 ("[t]o avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial").

■ Furthermore, Dr. Wissa does not dispute that he had a physician-patient relationship with Emmy, and therefore, owed some duty to Emmy. He admits he physically examined her prior to her surgery, filled out her history and physical form, and provided the anesthesia for her surgery. Instead, Dr. Wissa disputes that his duty to Emmy extended beyond his role in providing anesthesia, or that by completing a history and physical form prior to the procedure he assumed "full responsibility for Dr. Allen's conduct and all aspects of Emmy's care before, during and after the procedure." He argues that the trial court should have determined, as a matter of law, that he did not have a duty to Emmy outside the administration of anesthesia, and, accordingly, should have ignored Dr. Brown's report and criticisms to the contrary. As noted by the Supreme Court in *Praesel,* in deciding whether a legal duty exists, among other factors, the court "weigh[s] the risk, foreseeability and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant." *Praesel,* 967 S.W.2d at 397; *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993) (decision to impose common law duty involves complex considerations of public policy and their application to the particular facts of case). While Dr. Wissa's challenge to the scope of his legal duty to Emmy may indeed be a proper inquiry at trial, or during a summary judgment proceeding, it

is simply not a determination contemplated or required under the statutory language of Chapter 74. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*) ("[a] court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report. . . .").

■ Dr. Wissa also challenges Dr. Brown's qualifications to render an opinion on the standards of care applicable to Dr. Wissa in his role as the anesthesiologist for Emmy's surgery. Dr. Wissa points out that Dr. Brown does not recite any education, training or experience in the administration of anesthesia during a podiatric surgical procedure for debridement and wound closure. We respectfully disagree that only an expert in the same specialty field of practice can qualify as an expert for purposes of a Chapter 74 report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.402(b) (Vernon 2005). According to the statute, in order to testify about the accepted standards of care, a person must: (1) be practicing in "a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider;" (2) possess "knowledge of accepted standards of care . . . for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim;" and (3) be "qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care." *Id.* Accordingly, a qualified expert in a similar field may testify as to the accepted standards of care if he can demonstrate within the report that he possesses knowledge about the "care or treat-ment . . . delivered by the defendant" and "the diagnosis, care or treatment of the . . . condition involved in the claim." *Id.*

■ Turning to the report, it is undisputed that Dr. Brown's report does not criticize Dr. Wissa's actual administration of anesthesia, but instead, sets forth the applicable standards of care required of a licensed physician such as Dr. Wissa when completing a history and physical examination on a pre-operative patient like Emmy and when serving as a supervising physician for a podiatrist conducting a surgical procedure like the procedure done on Emmy. Additionally, it is undisputed that the report adequately sets forth Dr. Brown's credentials and vast experience as a board certified orthopedic surgeon and his familiarity with lower leg, foot and ankle problems, including wound infection.[3] Dr. Brown's report states that he knows the accepted standard of care required of Dr. Wissa and details the manner in which he is familiar with the accepted standards of care for completing pre-operative history and physical examinations and serving as a supervising physician for a podiatrist. For example, Dr. Brown affirmatively states:

> [I] am fully qualified to render opinions about the standard of care, breaches of the standard of care, and causation with respect to the damages caused by those breaches to Ms. Voosen by virtue of the fact that the process of pre-operative evaluation as 'Examining M.D. for Podiatry' is the same for orthopedic surgeons and any other medical doctor of any specialty who takes on that responsibility or who fails to take on that responsibility. The specific skills to perform a competent History and Physical

---

**3.** Dr. Brown's report dated February 19, 2007 is directed at both Dr. David R. Schmidt and Dr. Michael F. Wissa and is over eighteen pages in length. It details Dr. Brown's cre-dentials, documents reviewed, and the patient's history, and devotes over five pages to Dr. Wissa's care of Emmy.

Examination and Assessment and Plan are taught to all medical students in all specialty areas and contain common elements for all specialties, whether orthopedic surgery or anesthesiology.

The report further details ten standards of care "for Dr. Michael Wissa in treating patients with conditions like or similar to those experienced by Emmy Vossen" and the manner in which the care provided by Dr. Wissa failed to meet the enumerated standards. For example, Dr. Brown opines that when he performed a physical examination for purposes of filling out the history and physical form, Dr. Wissa was expected, as a medical doctor, to diagnose a wound infection and to recognize that it required hospitalization and "urgent consultation with other specialists."

Based on the record before us, Dr. Brown's report establishes that he is practicing health care in a field of practice that involves the same type of care or treatment as provided by Dr. Wissa to Emmy, and further establishes the necessary experience and knowledge to render an expert opinion. Accordingly, the trial court did not abuse its discretion when it denied Dr. Wissa's motion to dismiss. We affirm the trial court's order.