In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-12-00462-CV
_____

## KHALID KAYANI, Appellant

## V.

## TARYN STEVENS, Appellee

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-192,264**

## MEMORANDUM OPINION

Taryn Stevens sued Khalid Kayani, M.D. for alleged medical malpractice. Kayani objected to Stevens's expert report and moved to dismiss the lawsuit pursuant to section 74.351 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (West 2011). The trial court overruled Kayani's objections and denied his motion to dismiss. In his sole appellate issue in this interlocutory appeal, Kayani challenges the trial court's denial of his motion to dismiss. *See id.* § 51.014(a)(9) (West Supp. 2012). We affirm the trial court's order denying Kayani's motion to dismiss.

Standard of Review and Applicable Law

Section 74.351 requires a health care liability claimant to timely file sufficient expert reports. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (*l*) (West 2011). When considering a motion to dismiss for failure to comply with section 74.351, the trial court must determine "whether 'the report' represents a good-faith effort to comply with the statutory definition of an expert report." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *see also Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (*l*). Section 74.351 defines an "expert report" as follows:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West 2011). "Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document." *Palacios*, 46 S.W.3d at 878; *see also Wright*, 79 S.W.3d at 52.

"A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute." *Palacios*, 46 S.W.3d at 878; *see also Wright*, 79 S.W.3d at 52. An expert report constitutes a "good-faith effort" when the expert sets out his opinions on the standard of care, breach, and causation with

2

enough specificity to: (1) "inform the defendant of the specific conduct the plaintiff has called into question," and (2) "provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879; *see also Wright*, 79 S.W.3d at 52. "'[T]he expert must explain the basis of his statements to link his conclusions to the facts.'" *Wright*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). "A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes." *Palacios*, 46 S.W.3d at 879. "Nor can a report meet these purposes and thus constitute a good-faith effort if it omits any of the statutory requirements." *Id.* "The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.*

We review a trial court's ruling on a motion to dismiss pursuant to section 74.351 under an abuse-of-discretion standard. *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Wright*, 79 S.W.3d at 52. In matters committed to and within the trial court's discretion, we may not substitute our own judgment for the trial court's judgment. *Id.*

## The Expert Report of Dr. Orlando Suris

According to Dr. Suris's report, in 2010, Stevens underwent an abdominal myomectomy performed by Kayani, without apparent complications. Mild pelvic

adhesions were encountered and estimated blood loss totaled 1800 cc and required three units of blood to be transfused. Kayani's operative report failed to mention the removal of Stevens's left ovary, but the anatomic pathology report showed that the ovary was removed. According to a 2009 pelvic ultrasound, Stevens's left ovary was intact at that time. In 2011, Stevens underwent another surgery, which made clear the absence of the ovary and its previous removal. The blood supply to the ovary was intact. No ovary was removed within the myoma specimen.

Suris described the standard of care as follows:

[T]he level at which an ordinary, prudent professional having the same training and experience in good standing in a similar community would practice under the same circumstances. The surgical standard of care requires that before any surgical procedure is initiated, the anatomy of the patient be evaluated and addressed. In an abdominal myomectomy, it is not unusual for the uterus to be very enlarged and distorted, displacing adjacent organs and tissues. It is imperative for any surgeon to ascertain such anatomical changes before starting the surgical procedure.

Suris opined that Kayani encountered an inordinate amount of blood loss when removing the fibroids and inadvertently removed Stevens' left ovary. Suris explained that when this type of blood loss is encountered, a prudent physician should achieve hemostasis before continuing the surgery instead of operating blindly.

Suris stated that Stevens's medical records revealed that hemostasis was not achieved at the time of her blood loss. Suris believed that Kayani's deviation from the standard of care resulted in removal of a normal ovary, which leaves Stevens with only one functioning ovary and decreases her fertility potential. Suris concluded that Kayani

4

acted below the standard of care by removing an ovary during an abdominal myomectomy when there appeared to be no medical or surgical reason for its removal. Suris further explained that a physician has a duty to inform the patient if an ovary is removed, but that Stevens did not discover the missing ovary until a subsequent surgery.

The Standard of Care, Breach, and Causation

In his sole appellate issue, Kayani contends that the trial court should have granted his motion to dismiss on grounds that Suris's report is insufficient and conclusory as to the standard of care, breach, and causation. Kayani complains that Suris (1) failed to address Stevens's allegation that her ovary was removed without her consent, (2) failed to explain how Kayani's acts or omissions caused harm, how Kayani breached the surgical standard of care for a myomectomy, and what Kayani should have done differently to achieve hemostasis, (3) made generalized statements regarding the standard of care, (4) assumed that Kayani breached the standard of care and operated blindly, and (5) linked possible infertility to an "inadvertently" removed ovary and not to Kayani's breach of the standard of care.

Regarding Kayani's argument that Suris failed to address Stevens's claim that the ovary was removed without her consent, the record does not indicate that Kayani objected to Suris's report on this basis. Accordingly, this complaint is not preserved for appellate review. *See* Tex. R. App. P. 33.1(a); *see also Silsbee Oaks Health Care, L.L.P.*

5

*v. Chumley*, No. 09-10-00363-CV, 2010 Tex. App. LEXIS 10337, at \*11 (Tex. App.—Beaumont Dec. 30, 2010, pet. denied) (mem. op.).

As for Kayani's complaints regarding the sufficiency of Suris's report, Stevens was not required to marshal all her proof or present evidence in the report as if actually litigating the merits. *See Palacios*, 46 S.W.3d at 878-79. The report need not meet the same requirements as evidence offered in a summary-judgment proceeding or at trial. *Id.* at 879. The report need only (1) inform Kayani of the specific conduct Stevens has called into question, and (2) provide a basis for the trial court to conclude that Stevens's claims have merit. *See Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879.

Suris explained that, to meet the standard of care, Kayani had a duty to (1) determine whether Stevens had experienced any anatomical changes, given that in an abdominal myomectomy the uterus can be so enlarged and distorted as to misplace adjacent organs and tissues, (2) to stop operating when Stevens began to experience blood loss, and (3) to achieve hemostasis to stop the blood flow before continuing the operation. Kayani also bore a duty to inform Stevens that her ovary had been removed. Suris's report suggests that, according to the medical records, Kayani breached the standard of care by (1) operating amidst an inordinate amount of blood loss, instead of stopping the procedure to achieve hemostatis at the time of the blood loss, which led to removal of a healthy ovary, and (2) failing to inform Stevens that the ovary had been removed, even though the pathology report showed that the ovary had been removed. As

6

a result of Kayani's removal of a healthy ovary, Stevens has only one functioning ovary and a potential for decreased fertility.

Based on the facts presented, Suris's report explains, to a reasonable degree, how and why the alleged breach of the standard of care caused Stevens's injury. *See Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010). The report need not "rule out every possible cause of the injury, harm, or damages claimed[]" or "rule out all other possible scenarios." *Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 562 (Tex. App.—Dallas 2009, no pet.); *VHS San Antonio Partners LLC v. Garcia*, No. 04-09-00297-CV, 2009 Tex. App. LEXIS 7790, at *15 (Tex. App.—San Antonio Oct. 7, 2009, pet. denied) (mem. op.). The correctness of Suris's conclusions is an issue for trial or summary judgment. *See Wissa v. Voosen*, 243 S.W.3d 165, 169-70 (Tex. App.—San Antonio 2007, pet. denied). We, therefore, conclude that the trial court was justified in finding that Suris's report discusses the standard of care, breach, and causation with sufficient specificity to inform Kayani of the specific conduct called into question, *i.e.*, what should have been done differently and what care was expected, but not received. *See Palacios*, 46 S.W.3d at 879-80. The report provides a basis for the trial court to conclude that Stevens's claims have merit. *See Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. Because Stevens's expert report represents a good-faith effort to comply with the statutory definition of an "expert report," we overrule Kayani's sole issue and affirm the trial court's order denying Kayani's motion to dismiss.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on December 27, 2012
Opinion Delivered January 17, 2013
Before McKeithen, C.J., Gaultney and Horton, JJ.

8