# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00726-CV

**Texas San Marcos Treatment Center, L.P. d/b/a San Marcos Treatment Center, Appellant**

**v.**

**Veronica Payton, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
### NO. 13-2658, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Texas San Marcos Treatment Center, L.P., appeals the trial court's order denying its motion to dismiss Veronica Payton's negligence suit. The Center contends that the trial court abused its discretion in finding Payton's expert report adequate and denying the Center's motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code § 74.351. We will affirm the trial court's order.

## BACKGROUND

The following summary is drawn from allegations in Veronica Payton's petition and the expert's report. Payton worked as an aide at the Center, a facility licensed by the Texas Department of Family and Protective Services to provide behavioral health care and treatment to adolescent patients. The Center admitted as a patient a seventeen-year-old male who Payton alleges had a history of anger issues, physical and verbal aggression, and fighting with peers.

Payton alleges that the patient had several diagnosed issues including severe impulsivity, explosive expressions of anger, defiance, disruptiveness, and sexual behavior problems, but that Payton was not sufficiently informed about those diagnoses. The patient seemed quiet and cooperative until he assaulted Payton as she escorted him from a laundry room—an assault captured in part on video. The patient hit Payton, then choked and rendered her unconscious, inflicting neck and back injuries and a concussion. Doctors found that Payton suffered stress, anxiety, and depression after the assault.

Payton sued the Center for the following negligent acts or omissions: (1) failure to adequately staff the shift during which she was injured; (2) failure to adequately train her; (3) failure to adequately notify her of the patient's dangerous behavioral nature; (4) failure to adequately contain or supervise the patient despite admitting him to the children's unit; and (5) failure to ameliorate the risk from the patient to appellee and others. She asserted that these acts and omissions injured her, and she served on the Center an expert report authored by William H. Reid, M.D.

The Center moved to dismiss, objecting that Dr. Reid's report failed to meet the statutory requirements for expert reports under the Texas Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code § 74.351; *see also id.* §§ 74.001-.507. It contends that the report failed to set forth the applicable standard of care, failed to identify the acts or omissions that breached that standard, and failed to explain the causal relationship between the alleged breaches and the injuries alleged. Payton did not submit a revised or amended version of Dr. Reid's report or any other reports. The trial court overruled the Center's motion to dismiss Payton's claims for the report's alleged deficiencies.

2

**DISCUSSION**

The Center argues that Dr. Reid's report is not an objective good-faith effort to provide sufficient analysis for each element of a health-care liability claim because it: (1) fails to provide the relevant facts supporting his opinions regarding the applicable standard of care and alleged breaches; (2) fails to identify the applicable standards of care or alleged related breaches; and (3) contains conclusory and speculative causation opinions.

We review the trial court's decision on the adequacy of an export report for an abuse of discretion. *American Transitional Care Ctrs., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *see also Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (plurality op.). When the report lacks any explanation linking the expert's conclusions to the relevant facts, the trial court abuses its discretion in denying the defendant's motion to dismiss. *Jelinek v. Casas*, 328 S.W.3d 526, 540 (Tex. 2010). We may not substitute our judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

An "expert report" provides a fair, written summary of the expert's opinions regarding (1) the applicable standard of care; (2) the manner in which the care rendered by the physician or health care provider failed to meet the standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court that the report does not represent an objective good-faith effort to comply with the statutory requirements of the expert report. *Id.* § 74.351(l); *see Hebert v. Hopkins*, 395 S.W.3d 884, 890

(Tex. App.—Austin 2013, no pet.). Courts examine the report's adequacy based solely on information contained in the four corners of the report. *Austin Heart P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing *Palacios*, 46 S.W.3d at 878). This requirement "precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Id*. (citing *Wright*, 79 S.W.3d at 53). Although a report need not marshal all of a claimant's proof, it must include the expert's opinion on each of the elements identified in section 74.351 and be specific enough on each to (1) inform the defendant of the conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Id.* (citing *Wright*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 875, 878). The report must do more than merely state the expert's conclusions about the statutory elements—it must link the expert's conclusions to the facts. *Id*. (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

The Texas Supreme Court has applied the expert-report requirements under the Texas Medical Liability Act to a case in which a patient at a mental health hospital had a physical altercation with Williams, who worked as a psychiatric technician and professional caregiver at the facility. *See Texas West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012). The estate of the patient sued the hospital and the caregiver, and the caregiver filed cross-claims against the hospital for negligence. *Id.* at 175. The supreme court held that Williams needed expert testimony to provide evidence on proper training, supervision, and protocols to prevent, control, and defuse aggressive behavior and altercations in a mental hospital between patients and employed professional counselors who treat and supervise them. *Id.* at 182. The court noted that such issues concern the treatment of the patient, that their breach can affect those who treat the patients, and that

4

expert testimony is required to assess the connection between the breach and the claimed injury. *Id.* The claimant in that case failed to file a report, and his claims were dismissed by the supreme court. *Id.* at 175, 193.

**Standard of care and breach**

Dr. Reid's report discussed the standard of care for the Center as follows:

> That employer ([the Center]), by itself and through its various parts or assigns, had duties to its unit employee Ms. Payton which included, but may not have been limited to, (a) adequate *staffing* and staff support in her work environment (sufficient to meet reasonable levels of staff safety, as well as patient safety and care), (b) adequate *training* with regard to recognizing and managing situations that might arise in which her safety could be compromised, (c) adequate *notifications* of work situations or persons in her work environment that could reasonably present a danger to her or others, (d) adequate care in *avoiding or declining admission of patients/clients who are inappropriate* for the unit on which she worked, and (e) *elimination or amelioration of reasonably known risks* to her and other staff or patients created by patients/clients who are admitted to and housed on the unit on which she worked.

(Emphases in original.) The report elaborates on each of the elements described in the above paragraph.

Staffing: Dr. Reid opines that the Center's staffing on the evening Payton was assaulted was "lower than that required by plans of correction and/or other agreements with the Texas Department of Family and Protective Services (DFPS)." He states that the unit should have had at least three staff persons, one of whom was male, instead of the two women assigned to the unit that evening. Although he did not cite the applicable regulation or specific plan of correction or agreement, his report does set forth a specific statement of what was required and how the Center failed to meet the standard.

5

Staff training: Dr. Reid opines that Payton's file and the Center's employee handbook contain "no indication that Ms. Payton received any training from [the Center] regarding her safety in the workplace, and particularly none related to recognizing potentially dangerous patients, recognizing potentially assaultive patients, or protecting herself from patient assault." This statement indicates Reid's opinion that the standard of care requires facilities to train their staff members on safety, recognizing danger, and protecting themselves. Dr. Reid's report specifies what subjects the training should cover and states that the Center failed to do so.

Staff notification: Dr. Reid states that the Center knew the patient's history of "severe impulsivity or explosive expression of anger" from the patient's examination and yet "review of materials associated with the January 2, 2012, assault upon Ms. Payton reveals no indication that Ms. Payton or other unit staff had been notified or otherwise advised that the patient was potentially assaultive or otherwise dangerous, or that her escorting him off the unit to the laundry alone was unsafe." This statement indicates Dr. Reid's opinion that the standard of care requires that reasonably prudent facilities inform their staffs about dangerous patients. Dr. Reid specifies what information the Center should have provided and states that the Center failed to provide it.

Patient admission and protection of others: Dr. Reid states that the Center's knowledge of the patient's history, behaviors, and symptoms should have alerted the Center that the patient was inappropriate for admission and/or was not suited in terms of safety for housing on the boys' unit without special supervision or containment. Dr. Reid further states that "[the Center] knew or reasonably should have known that [the patient] was dangerous or assaultive, and should have been physically contained and/or supervised by more than one, female, staff person. There is no indication in the records available to me that [the Center] did anything, physically or clinically,

6

to ameliorate the danger from [the patient] to staff and other patients." These statements indicate Dr. Reid's opinion that such facilities have a duty to admit only patients suited for the facility and to house and treat dangerous patients with additional supervision, physical containment, or clinical methods to protect patients and staff.

We cannot conclude that the trial court abused its discretion by concluding that the expert's report here sufficiently informed the Center of what it should have done and what it should have done differently. *See Palacios*, 46 S.W.3d at 880; *see also Wright*, 79 S.W.3d at 52 (cannot substitute our judgment for the trial court's judgment unless it acted arbitrarily or unreasonably). Dr. Reid said that DFPS required three staffers, including one male, and that the Center assigned only two females. He said that the Center should have trained its staff to recognize danger and warned its staff of known danger, but did not do either. The aspects of the report addressing patient admission and protection of others are less specific, but we cannot say that the trial court abused its discretion by concluding that they constitute a good-faith effort to inform the Center of the conduct the plaintiff questions and to provide a basis for the trial court to conclude that the claims have merit. *See id.* Whether Dr. Reid's opinions are correct is the subject of a summary-judgment proceeding or trial, not a Chapter 74 motion to dismiss. *See Methodist Hosp. v. Shepherd-Sherman*, 296 S.W.3d 193, 199 n.2 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Wissa v. Voosen*, 243 S.W.3d 165, 169 (Tex. App.—San Antonio 2007, pet. denied).

**Causation**

The common thread in each causation theory alleged is that the Center's act or omission caused Payton to be alone with the patient, be vulnerable to his strength and volatility, and

be hurt as a result. This Court has stated that "[t]he causal connection in medical malpractice suits must be made 'beyond the point of conjecture' and 'must show more than a possibility' to warrant submission of the issue to a jury." *Fung v. Fischer*, 365 S.W.3d 507, 530 (Tex. App.—Austin 2012, no pet.) (citing *Lenger v. Physician's Gen. Hosp.*, 455 S.W.2d 703, 706 (Tex. 1970)); *see also Bowie Mem'l Hosp., Inc.*, 79 S.W.3d at 53). Further, we have held that "[r]eports providing a 'description of only a possibility of causation do[ ] not constitute a good-faith effort to comply with the statute.'" *Fung*, 365 S.W.3d at 530 (citing *Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)). However, the expert report is not required to prove the defendant's liability, but rather to provide notice of what conduct forms the basis for the plaintiff's complaints. *Hayes v. Carroll*, 314 S.W.3d 494, 507 (Tex. App.—Austin 2010, no pet.) (citing *Apodaca v. Russo*, 228 S.W.3d 252, 255 (Tex. App.—Austin 2007, no pet.)).

Dr. Reid wrote in the expert report as follows:

> (a) If staffing had been adequate (that is, at least one more capable staff person on the 17-patient unit), Ms. Payton would not have believed it necessary to accompany [the patient] to the laundry alone. (See her statement.)
>
> (b) If there had been adequate male staffing on the boys' unit, Ms. Payton would not have been in the position of being a sole female vulnerable to attack by a physically stronger, younger male. (See her statement.)
>
> (c) If Ms. Payton had received adequate training regarding the dangers of escorting patients such as [the patient] off-unit alone, she would not have escorted him alone to the laundry room.
>
> (d) If Ms. Payton had been adequately informed by [the Center] of [the patient]'s past history of such things as violence, impulsive and assaultive behavior, other behaviors noted above, and his pre-admission history of "severe impulsivity or explosive expression of anger" (cf. Dr. Harrell's pre-incident evaluation, December 12-13, 2011), she would not have escorted him to the laundry room alone.

8

(e) If [the patient] had not been admitted to [the Center] and housed on Ms. Payton's boys' unit (to the extent that he was negligently admitted and housed; see above), Ms. Payton would not have been assaulted and injured by him on January 2, 2012.

(f) If [the patient] had been placed on adequate safety precautions, such as with the containment and/or supervision reasonably required given his past history, Ms. Payton would not have escorted him to the laundry room alone.

These assertions are tied to the facts and standards of care laid out by Dr. Reid and show the connection alleged between the Center's act or omission and the patient's assault on Payton that caused the injuries she claims. We cannot say on this record that the trial court abused its discretion by finding the report to be a good-faith effort to inform the Center of the basis of Payton's claim and to allow the trial court to assess its merit.

## CONCLUSION

We cannot say that the trial court abused its discretion by concluding that Dr. Reid's report was a good-faith effort to provide a fair summary of the elements of Payton's claim as required by Texas Civil Practice & Remedies Code subsections 74.351(l) and 74.351(r)(6). We affirm the trial court's order.

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: November 18, 2015

9