# NO. 12-23-00225-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WILLOW SNF, LLC D/B/A WILLOW REHAB & NURSING AND ADVANCED HCS, LLC, APPELLANTS* | *§* | *APPEAL FROM THE* |
| *V.* | *§* | *COUNTY COURT AT LAW NO. 2* |
| *ANYONNA HARDIMON, ON BEHALF OF JESSIE MAE TURNER, APPELLEE* | *§* | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Willow SNF, LLC d/b/a Willow Rehab and Nursing (Willow) and Advanced HCS, LLC (HCS)[1] appeal the trial court's order denying their motion to dismiss the health care liability lawsuit that Anyonna Hardimon filed against them on behalf of her grandmother, Jessie Mae Turner.[2]  We affirm.

### BACKGROUND

From March 19, 2019, to January 26, 2023, Turner resided at Willow, a skilled nursing facility that was "managed, operated, supervised[,] and/or staffed" by Appellants.  Turner had a history of falling, reduced mobility, dorsalgia, essential hypertension, dysphagia, gastroesophageal reflux disease, and presence of an intraocular lens, and she needed assistance with activities of daily living, as well as "appropriate care based upon her conditions."  According to Hardimon, upon Turner's admission to Willow, she was "a high fall risk and [a] high skin breakdown risk."

---

[1] For clarity and brevity, we will refer to Willow and HCS collectively as "Appellants."

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2023) (providing for interlocutory appeal of denial of relief sought in motion challenging adequacy of expert report).

Hardimon maintained that Willow knew of Turner's comorbidities, which increased her risk of pressure ulcers, falls, and urinary tract infections, and Appellants were required to formulate care plans to account for Turner's health conditions and potential related complications.

Hardimon brought health care liability claims against Appellants on behalf of Turner, contending that while Turner resided at Willow, she developed pressure wounds, sustained a fracture, and contracted urinary tract infections. Hardimon maintained that Appellants were negligent by (1) failing to observe, intervene, and care for Turner; (2) neglecting Turner; (3) failing to provide medical and nursing care reasonably required for Turner's known conditions; and (4) failing to adequately supervise and train staff and personnel. Hardimon also asserted claims for corporate negligence and gross negligence, contending that Appellants (1) failed to ensure that appropriate levels of medical and nursing staff were maintained to provide care, monitoring, and supervision of residents, (2) staffed the facility below what was necessary to provide proper care for each resident, (3) failed to sufficiently train and conduct follow-up reviews of medical and nursing staff, (4) failed to ensure that sufficient funds were budgeted and expended for staff, training of staff, medical supplies, and medical treatment and care, and (5) failed "to properly capitalize the facility" to ensure that all residents received required medical treatment, monitoring, and supervision. Hardimon sought damages for Turner's alleged pain and suffering, mental anguish, disfigurement, physical impairment, and medical expenses.

In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Hardimon provided an expert report by Dr. Marty Lee Schmidt. Appellants filed objections to Dr. Schmidt's report, in which they argued that Dr. Schmidt is not qualified to provide an expert report because his "field of practice does not involve the same type o[f] care or treatment" provided by Appellants. Appellants also contended that Dr. Schmidt's report does not demonstrate that he is "familiar with the standard of care for residents in a nursing home setting[]" or has experience qualifying him to discuss the standards of care applicable to the nurses and staff who work in a nursing home. Appellants further maintained that Dr. Schmidt's report does not demonstrate that he has participated in care plans or has knowledge regarding "what fall precautions could or should be used in a nursing home setting[.]" The trial court signed an order overruling Appellants' objections to Dr. Schmidt's report, and this interlocutory appeal followed.[3]

---

[3] Although Willow and HCS did not seek dismissal in their objections to Dr. Schmidt's report, the trial court's order states that the court overrules their objections and denies their motion to dismiss.

<u>**QUALIFICATION TO OFFER EXPERT REPORT**</u>

In two issues, Appellants contend the trial court abused its discretion by overruling their objections to the report because Dr. Schmidt is not qualified to render an opinion as to (1) breach of the standard of care and (2) causation. We address issues one and two together.

## Standard of Review

We review a trial court's ruling on the qualifications of a medical expert and the sufficiency of the expert's report under Chapter 74 for an abuse of discretion. ***Van Ness v. ETMC First Physicians***, 461 S.W.3d 140, 142 (Tex. 2015); ***Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios***, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses its discretion if it acts without reference to guiding rules or principles. ***Van Ness***, 461 S.W.3d at 142; ***Jelinek v. Casas***, 328 S.W.3d 526, 539 (Tex. 2010). In exercising its discretion, the trial court must review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. ***Van Ness***, 461 S.W.3d at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. ***Gray v. CHCA Bayshore L.P.***, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## Expert Report Requirements

The Texas Medical Liability Act (TMLA) requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2023). The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. ***Certified EMS, Inc. v. Potts***, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care, explain how a physician or health care provider failed to meet that standard, and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); ***Potts***, 392 S.W.3d at 630.

## Qualification

The TMLA provides that a physician is qualified to submit an expert report regarding the causal relationship between a departure from the standard of care and the alleged injury, harm, or damages claimed when he would otherwise be qualified to address causation under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (West Supp. 2023). In

addition, a person may qualify as an "expert" on the question of whether the health care provider departed from the accepted standard of care if the person:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, *if the defendant health care provider is an individual*, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id*. § 74.402(b) (West 2017) (emphasis added). "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. In determining whether a witness is qualified on the basis of training or experience, the trial court must consider whether, at the time the claim arose or the testimony is given, the witness (1) is certified by a state or national professional certifying agency or "has other substantial training or experience" in the area of health care that is relevant to the claim; and (2) "is actively practicing health care in rendering health care services relevant to the claim." TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c).

Every licensed medical doctor is not automatically qualified to testify as an expert on every medical question, and the proponent of the testimony must show that the expert has special knowledge regarding the matter on which he proposes to give an opinion. *Ehrlich v. Miles*, 144 S.W.3d 620, 625 (Tex. App.—Fort Worth 2004, pet. denied). The report must demonstrate that the expert has "'knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id*. (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)); *see Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). To render opinions about breach of the standard of care and causation, the expert must do more than merely allege that he is a medical doctor, and a reviewing court cannot fill in gaps in a report by drawing inferences. *See, e.g.*, *Collini v. Pustejovsky*, 280 S.W.3d 456, 462, 465-67 (Tex. App.—Fort Worth 2009, no pet.) (concluding that trial court erred in denying physician's motion to dismiss because expert report did not demonstrate that expert

was qualified to testify regarding causation).  The expert's qualifications must appear within the four corners of the expert report or its accompanying curriculum vitae. ***Cornejo v. Hilgers***, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Dr. Schmidt's curriculum vitae states that he is board certified in pediatric medicine, but "he devotes 70% of his primary care practice to the care and treatment of adults and geriatric patients.  He has experience in the care and treatment of patients/residents of skilled nursing facilities, private residence and assisted living facilities whom he sees at his clinic on an outpatient basis." Dr. Schmidt's report states as follows, in pertinent part:

> I have over 33 years of medical experience as a physician. I am currently a private practice physician licensed in the states of Alabama, Texas, New Mexico, and Missouri.  I devote at least 95% of my professional time to the active clinical practice of medicine.  I am board certified in pediatric medicine. However, I devote at least 70% of my primary care practice to the care and treatment of adult and geriatric patients.  I have experience in the care and treatment of patients and residents of skilled nursing facilities, private residence and assisted living facilities whom I see at my clinic on an outpatient basis.  At the time of the occurrence of the injuries complained of, I worked fulltime as a physician.  As a physician in private practice, I am very familiar and have had occasion to treat a large number of patients who have medical history of diabetes and have developed pressure wounds and also have suffered injuries such as fractures of the pelvis.  I am familiar with pelvic fractures and have treated at least 50 patients who have suffered this type of injury.  I have also had occasion to treat patients who are at risk for pressure wounds and development of pressure wounds. In my practice[,] I have treated at least 50 residents with medical history and injuries complained of in this case.  I have knowledge of the standards of care related to the preventions and treatment of falls such as those complained of in the care of Ms. Turner.  I have experience in prevention or mitigation of falls in adults whose medical history makes them a high pressure injury risk.
>
> . . .
>
> In the regular course of my medical practice[,] I have had occasion to diagnose and treat patients with conditions similar to or identical with Ms. Turner who are at risk for falls and who suffer falls or injury while under the care of skilled nursing facilities.  I have extensive knowledge experience in the injuries complained of and that were suffered by Ms. Turner.  I am also familiar with the standards for skilled nursing facilities, as well as nursing staff who are employed by skilled nursing facilities in the provision of care to residents such as Ms. Turner.  I have written orders for the care and treatment of these patients and have supervised the execution of these orders by RNs, LVNS and CNA[]s who were assigned to provide the hands-on care to patients.  These orders included orders for the prevention of pressure wounds, dehydration[,] and septic shock. I am familiar with the duties and interventions used in the prevention of falls and injuries resulting from falls.  I am familiar with the standards of care for the skilled nursing facility involved in this claim[,] as well as the standards of care as they pertain to RNs, LVNs and CNAs who were providing care to Ms. Turner.

Dr. Schmidt opined that the care provided to Turner fell below accepted standards of care because Willow and HCS (1) accepted and retained a resident whose needs they were unable to meet, (2) failed to provide appropriate nursing care and services, (3) failed to provide appropriate pressure ulcer prevention care, and (4) failed to prevent Turner from suffering a fracture, and he opined that

"the events and failures set forth in this report proximately caused Ms. Turner's injuries and led to her pain and suffering." Dr. Schmidt's report concluded as follows: "Due to the failures and breaches in the standard of care, . . . Ms. Turner suffered a fracture of the left pubis ramis and developed pressure wounds to the right buttock, right rear knee, bilateral heels[,] and sacrum. All these injuries caused pain and suffering."

In their brief, Appellants point out that Dr. Schmidt is board certified in pediatrics rather than geriatrics or internal medicine and "he only sees patients in the private clinic setting as opposed to a skilled nursing facility." Appellants argue that nothing in Dr. Schmidt's report indicates that he has worked in a nursing home or skilled nursing facility, overseen the care of patients in skilled nursing facilities, or possesses experience qualifying him to discuss the standard of care and breach of the standard of care as to nurses and staff. Appellants also maintain that Dr. Schmidt is not qualified to offer an opinion regarding breach of the standard of care because he "does not practice health care in the same field as Appellants." According to Appellants, although Dr. Schmidt states that he has treated patients with pelvic fractures and patients who are at risk of pressure sores, his report does not show that he is "familiar with the standard of care or breach of the standard of care for skilled nursing facilities" such as Willow, and his report and curriculum vitae do not establish that he has knowledge, skill, experience, training, or education in internal medicine or geriatric medicine. Appellants further contend that Dr. Schmidt's background in pediatric medicine, primary care, and urgent care does not qualify him "to render an opinion on Ms. Turner's injury in a skilled nursing facility."

The TMLA's requirement that an expert be practicing health care in a field that involves the same type of care as that delivered by the defendant health care provider applies only "if the defendant health care provider is an individual[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(1); ***TTHR, L.P. v. Coffman***, 338 S.W.3d 103, 112 (Tex. App.—Fort Worth 2011, no pet.). Because neither Willow nor HCS is an individual, Section 74.402(b)(1) does not apply in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(1); ***Coffman***, 338 S.W.3d at 112. Rather, under the TMLA, a qualified expert in a case not involving an individual health care provider must simply possess knowledge of the accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim and the necessary training or experience to offer an expert opinion regarding a breach of the standard of care. TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(2)-(3); *see also **Coffman***, 338 S.W.3d

6

at 112. As discussed above, a person is qualified to offer an opinion regarding the causal relationship between the alleged departure from the standard of care and the injury, harm, or damages claimed if he is a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C).

As set forth above, Dr. Schmidt's report and curriculum vitae state that he has thirty-three years of experience as a physician, and although he is board certified in pediatric medicine, at least 70% of his primary care practice involves care and treatment of adult and geriatric patients. In addition, Dr. Schmidt's report explains that he has experience with treating patients and residents of skilled nursing facilities on an outpatient basis, and that he was working full time as a physician when Turner's injuries occurred. Moreover, the report indicates that Dr. Schmidt treated "a large number of patients" who are at risk for pressure wounds and patients who developed pressure wounds and suffered pelvic fractures. According to the report, Dr. Schmidt treated at least fifty "residents" with the same medical history and injuries as Turner. The report also explains that Dr. Schmidt has knowledge regarding the standards of care for preventing and treating falls, as well as for treating patients who are at high risk of pressure injuries. In addition, Dr. Schmidt's report states that he diagnosed and treated patients who suffer falls and injury while under the care of skilled nursing facilities, including the type of injuries Turner suffered. Furthermore, Dr. Schmidt's report recites that he is familiar with the standards for skilled nursing facilities and their nursing staff, and he has written orders for the care and treatment of such patients and supervised the execution of his orders by nurses and CNAs. According to the report, Dr. Schmidt is "familiar with the standards of care for the skilled nursing facility involved in this claim[,]" as well as the standards of care for the RNs, LVNs and CNAs who were providing care to Turner. The report explains that Dr. Schmidt's orders have included instructions for preventing pressure wounds and dehydration, and his report also sets forth the specific requirements for meeting the standards of care applicable to patients like Turner.

Under the TMLA, the relevant test is whether the report establishes that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that subject. *Roberts*, 111 S.W.3d at 121 (quoting *Broders*, 924 S.W.2d at 153). In other words, a qualified expert in a similar field may testify as to the accepted standards of care if he can demonstrate within his report that he possesses

knowledge about the care or treatment delivered by the defendants and the diagnosis, care, or treatment of the condition involved in the claim. *IHS Acquisition No. 140, Inc. v. Travis*, No. 13-07-00481-CV, 2008 WL 1822780, at *4 (Tex. App.—Corpus Christi 2008, pet. denied) (mem. op.) (citing *Wissa v. Voosen*, 243 S.W.3d 165, 170 (Tex. App.—San Antonio 2007, pet. denied)). As the *Travis* court noted, "[t]he essential claim in this case concerns the standard of care that should be applied in nursing homes, which are facilities where elderly and infirm persons reside." *Id*. at *5. Although Dr. Schmidt is not board certified in geriatrics or internal medicine and is not on staff in a skilled nursing facility, his report demonstrates that he has knowledge, experience, and expertise regarding the areas of medical practice relevant to the claim and is actively practicing medicine in rendering medical care services that are relevant to the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b), (c). Accordingly, we conclude that the trial court did not abuse its discretion by determining that Dr. Schmidt was qualified to offer an opinion regarding departures from the standard of care and causation and overruling Appellants' objections to the report. *See id*. §§ 74.351(r)(5)(C), 74.402(b), (c); TEX. R. EVID. 702; *Van Ness*, 461 S.W.3d at 142; *Roberts*, 111 S.W.3d at 121; *Palacios*, 46 S.W.3d at 875; *Coffman*, 338 S.W.3d at 112; *Travis*, 2008 WL 1822780, at *4-5; *Ehrlich*, 144 S.W.3d at 625. For all these reasons, we overrule issues one and two.

## DISPOSITION

Having overruled issues one and two, we ***affirm*** the trial court's order overruling Appellants' objections to Dr. Schmidt's report.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 24, 2024.
*Panel consisted of Worthen, C.J., and Hoyle, J.*
*Neeley, J., not participating.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 24, 2024**

**NO. 12-23-00225-CV**

**WILLOW SNF, LLC D/B/A WILLOW REHAB & NURSING AND ADVANCED HCS, LLC,**
Appellants
V.
**ANYONNA HARDIMON, ON BEHALF OF JESSIE MAE TURNER,**
Appellee

---

Appeal from the County Court at Law No. 2
of Gregg County, Texas (Tr.Ct.No. 2023-475-CCL2)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below denying Appellants' motion to dismiss be in all things affirmed, and that all costs of this appeal be, and the same are, adjudged, against the Appellants, **WILLOW SNF, LLC D/B/A WILLOW REHAB & NURSING** and **ADVANCED HCS, LLC**, for which let execution issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., and Hoyle, J.*
*Neeley, J., not participating.*